[No. B021058. Second Dist., Div. Five. Nov. 12, 1986.]

KEVIN OKURA, Plaintiff and Appellant, v.
UNITED STATES CYCLING FEDERATION et al.,
Defendants and Respondents.

**1464**

**Counsel**

Edwin J. Wilson, Jr., and Jo Ann Iwasaki Parker for Plaintiff and Appellant.

Hagenbaugh & Murphy, Robert F. Donohue, Spray, Gould & Bowers, David T. Acalin, Cynthia Goodman and Robert Dean for Defendants and Respondents.

**Opinion**

**HASTINGS (Gary), J.**\*—On August 4, 1984, appellant was injured while participating in a bicycle race known as the Hermosa Beach Grand Prix. The race was organized and staffed by members and volunteers of the South Bay Wheelmen, Inc., a nonprofit affiliate of the United States Cycling Federation. The United States Cycling Federation is a nonprofit organization of amateur competitive cyclists which sanctions bicycle races and provides clinics and training for members to prepare them for racing events. The race was run on closed portions of the public streets of Hermosa Beach. The city had issued a permit for the event.

Appellant has brought suit against the South Bay Wheelmen, United States Cycling Federation and the City of Hermosa Beach alleging negligence in the preparation and maintenance of the course. Plaintiff was racing in the second to last race of the day and apparently fell when his bicycle hit

---

\*Assigned by the Chairperson of the Judicial Council.

loose debris as he was crossing railroad tracks on the course. He slid into a loose guardrail and was injured upon impact.

Summary judgment was granted to respondents herein based upon a release admittedly signed by appellant prior to entering the race. The release is contained on the entry form which is titled "SOUTHERN CALIFORNIA CYCLING FEDERATION STANDARD ATHELETE'S ENTRY BLANK AND RELEASE FORM." The language of the release contained immediately below the title is as follows: "In consideration of the acceptance of my application for entry in the above event, *I hereby waive, release and discharge any and all claims for damages for* death, *personal injury* or property damage which I may have, or which may hereafter accrue to me, *as a result of my participation in said event. This release is intended to discharge in advance the promoters, sponsors, the U.S.C.F.,* the S.C.C.F., *the promoting clubs,* the officials, *and any involved municipalities or other public entities* (and their respective agents and employees), from and against any and all liability arising out of or connected in any way with my participation in said event, *even though that liability may arise out of negligence or carelessness on the part of the persons or entities mentioned above.*

"I further understand that serious accidents occasionally occur during bicycle racing: and that participants in bicycle racing occasionally sustain mortal or serious personal injuries, and/or property damage, as a consequence thereof. Knowing the risks of bicycle racing, nevertheless, I hereby agree to assume those risks and to release and hold harmless all of the persons or entities mentioned above who (through negligence or carelessness) might otherwise be liable to me (or my heirs or assigns) for damages.

"It is further understood and agreed that this waiver, release and assumption of risk is to be binding on my heirs and assigns.

"I agree to accept and abide by the rules and regulations of the United States Cycling Federation." (Italics added.) The only remaining terms on the form are for information regarding the entrant such as: signature, name, address, phone number, date, age and class entered. The whole form is only eight inches wide and three and one-half inches high. The language of the release portion quoted above takes up approximately 40 percent of the form.

The facts presented to the trial court regarding the release were uncontradicted. Appellant admitted signing the release but complained he had no choice and that he had no chance to inspect the course himself because the organizers prevented the participants from going onto the course except during the race. He argues that the release form is void as against public

policy because it is a contract of adhesion and that the form itself is not sufficient to put a participant on notice that he is actually signing a release.

■■ *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693] sets forth the basic law regarding the validity of preincident releases. First of all, the case recognizes that not all releases of liability are invalid under Civil Code section 1668. Those releases that do not involve transactions affecting "the public interest" may stand. The case sets forth six areas to consider to determine whether or not the public interest is affected: "In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. [1] It concerns a business of a type generally thought suitable for *public regulation.* [2] The party seeking exculpation is engaged in performing *a service of great importance to the public, which is often a matter of practical necessity for some members of the public.* [3] The party holds himself out as willing to perform this service for *any member of the public who seeks it,* or at least for any member coming within certain established standards. [4] As a result of *the essential nature of the service, in the economic setting of the transaction,* the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a *superior bargaining power* the party confronts the public with a *standardized adhesion contract of exculpation,* and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, *the person or property of the purchaser is placed under the control of the seller,* subject to the risk of carelessness by the seller or his agents." (Italics added, fns. omitted, 60 Cal.2d at pp. 98-101.) Bearing these in mind, we will analyze this case.

1. *Public Regulation*

The transaction in this case was entry into a public bicycle race organized by private nonprofit organizations. While bicycles generally are regulated to the extent they are subject to motor vehicle laws, the organized racing of bicycles is not the subject of public regulation. Neither the South Bay Wheelmen nor the United States Cycling Federation are subject to public regulation.

2. *Is This a Service of Great Importance to the Public?*

The service provided here was the organization and running of competitive bicycle races for members of the organizers and the public. The race or-

ganizers obtained the necessary permits; laid out the course; manned the course; obtained sponsors; and advertised the event. This is very similar to the organization and sponsorship of the numerous 10-kilometer and marathon running events that have blossomed since the mid to late 1970's. However, herein, the races were divided into different classes. Appellant was riding in an "open" public event. Without such organization and sponsorship, those that desire to enter bicycle racing would undoubtedly have no chance to do so under organized settings. Therefore, there is no doubt but that respondents offer a public service. However, does it measure up to the public importance necessary to void the release.

In *Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d 92, the question was whether or not a public hospital provided a service of great public importance. The question was answered in the affirmative. The question was also answered in the affirmative regarding escrow companies in *Akin* v. *Business Title Corp.* (1968) 264 Cal.App.2d 153 [70 Cal.Rptr. 287]. In *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410], the Supreme Court held that hospitals, and the relationship between hospitals and physicians, were sufficiently important to prevent an exculpatory clause from applying to a doctor suing a hospital based upon hospital bylaws. In *Vilner* v. *Crocker National Bank* (1979) 89 Cal.App.3d 732 [152 Cal.Rptr. 850], the court found that the practice of night deposits was of great public importance regarding the banking industry and its customers so that an exculpatory clause in a night deposit agreement was unenforceable. Also, common carriers provide a sufficiently important public service that exculpatory agreements are void. (Rest.2d Contracts, § 195, com. a, p. 66.)

Measured against the public interest in hospitals and hospitalization, escrow transactions, banking transactions and common carriers, this transaction is not one of great public importance. There is no compelling public interest in facilitating sponsorship and organization of the leisure activity of bicycle racing for public participation. The number of participants is relatively minute compared to the public use of hospitals, banks, escrow companies and common carriers. Also, the risks involved in running such an event certainly do not have the potential substantial impact·on the public as the risks involved in banking, hospitals, escrow companies and common carriers. The service certainly cannot be termed one that "is often a matter of practical necessity for some members of the public." (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at p. 99.)

3. *That the Service Is Open to Any Member of the Public.*

It appears that anyone with a bicycle and the entrance fee who desires to enter the event can do so under standards established by the organizers.

### 4. The Economic Setting and "The Essential Nature of the Service."

Item 4 seeks to measure the relative bargaining strengths of the parties. However, its prefaced by the words "the *essential nature of the service*." (60 Cal.2d at pp. 99-100.) This ties in with item 2 above. The service provided herein can hardly be termed essential. It is a leisure time activity put on for people who desire to enter such an event. People are not compelled to enter the event but are merely invited to take part. If they desire to take part, they are required to sign the entry and release form. The relative bargaining strengths of the parties does not come into play absent a compelling public interest in the transaction.

### 5. Superior Bargaining Power and Standardized Adhesion Contract.

As set forth in item 4, this is not a compelled, essential service. The transaction raises a voluntary relationship between the parties. The promoters and organizers volunteer to hold a race if the entrants volunteer to take part for a nominal fee and signature on the entry and release form. These are not the conditions from which contracts of adhesion arise. Therefore, this item is not applicable.

### 6. The Provision of Control.

Compared to the patient who has placed himself in the exclusive control of the hospital in *Tunkl,* or the passenger who sits on a public conveyance, no such release of control exists here. Appellant retained complete control of himself and his bicycle and at any time could have dropped out of the race. Respondents had no control over how appellant rode his bicycle or approached the area in question except as to the general layout of the course.

Except for item 3, appellant's situation does not fall within the guidelines set out in *Tunkl.* (60 Cal.2d at p. 92.) This situation does not present a transaction affecting the public interest. Therefore, there is no proscription for the release contained in the entry and release form herein. The trial court correctly relied upon the case of *McAtee* v. *Newhall Land & Farming Co.* (1985) 169 Cal.App.3d 1031 [216 Cal.Rptr. 465].

██ ██ Finally, no triable issues of fact exist regarding whether the release form is clear and legible or whether the release form released respondents from the type of risk which caused appellant's injuries. As previously indicated, the entire form is only three and one-half inches by eight inches and the only printing on the form other than the incidental information relating to the competitor is the release language. It is not buried in a lengthy document or hidden among other verbiage. The type is clear

and legible and in light of the fact it has no other language to compete with, its size is appropriate. The language is clear and unambiguous and the first paragraph concludes with "even though that liability may arise out of negligence or carelessness on the part of the persons or entities mentioned above." The entities mentioned obviously include the South Bay Wheelmen who were the "promoters and sponsors" of the event, the United States Cycling Federation and the City of Hermosa Beach, "any involved municipalities."

For the foregoing reasons, the judgment is affirmed.

Feinerman, P. J., and Ashby, J., concurred.