[No. B022865. Second Dist., Div. Five. Aug. 4, 1987.]

ALBERT I. BENNETT, Plaintiff and Appellant, v.
UNITED STATES CYCLING FEDERATION et al., Defendants and
Respondents.

COUNSEL

Gary P. Eisenberg and Sydney B. Cook for Plaintiff and Appellant.

Thomas & Price and Everett S. Hinchcliffe for Defendants and Respondents.

## OPINION

### EPSTEIN, J.*—

Albert Bennett (plaintiff) appeals from the dismissal of his complaint following the granting of a motion for summary judgment by defendants, United States Cycling Federation and others[1] (jointly referred to as USCF or defendants). The appeal concerns the enforceability of a printed agreement to hold harmless and release (release) signed by plaintiff prior to his sustaining injuries in defendants' bicycle race. Since we conclude that there is a triable issue of material fact as to whether the release covers plaintiff's claims, we must reverse the judgment.

### FACTS

On June 10, 1984, plaintiff entered an amateur bicycle race sanctioned and conducted by defendants. Defendants provided plaintiff with a document entitled "Southern California Cycling Federation Standard Athlete's Entry Blank and Release Form."[2]

---

* Assigned by the Chairperson of the Judicial Council.

[1] The others are: Southern California Cycling Federation, South Bay Wheelmen, Inc., Gordon Stauble, and the City of Torrance.

[2] The body of the document reads: "In consideration of the acceptance of my application for entry in the above event, I hereby waive, release and discharge any and all claims for damages for death, personal injury or property damage which I may have, or which may hereafter accrue to me, as a result of my participation in said event. This release is intended to discharge in advance the promoters, the sponsors, the U.S.C.F., the S.C.C.F., the promoting clubs, the officials, and any involved municipalities or other public entities (and their respective agents and employees), from and against any and all liability arising out of or connected in any way with my participation in said event, even though that liability may arise out of negligence or carelessness on the part of the persons or entities mentioned above.

"I further understand that serious accidents occasionally occur during bicycle racing; and that participants in bicycle racing occasionally sustain mortal or serious personal injuries; and/or property damage, as a consequence thereof. Knowing the risks of bicycle racing, nevertheless, I hereby agree to assume those risks and to release and hold harmless all of the persons or entities mentioned above who (through negligence or carelessness) might otherwise be liable to me (or my heirs or assigns) for damages.

"It is further understood and agreed that this waiver, release and assumption of risk is to be binding on my heirs and assigns.

"I agree to accept and abide by the rules and regulations of the United States Cycling Federation."

There is a conflict in the evidence as to the type size of the release. Plaintiff's declaration states that it is five and one-half type; defendant's declaration measures it at seven point. We will assume the correctness of plaintiff's measurement since our review is from an order granting a motion for summary judgment.

While participating in the scheduled racing event, plaintiff collided with an automobile driven by James Ketchum and owned by John Gismond.[3] Plaintiff alleged that during the race, the vehicle was permitted onto the track by agents or servants of defendants, who knew, or who should have known, of the hazard it presented to the cyclists. The driver of the vehicle testified in deposition that he drove up to a barrier blocking vehicular traffic. A person stationed at the barrier asked him what he was doing. The driver said that he was returning a camera to work, and the attendant let him drive onto the course. Plaintiff's declaration states that, before the race, he saw barriers in place, blocking automotive access to the racecourse. He was not told that automobiles would be on the racecourse, and he saw none there before the race. The complaint alleges that the accident occurred as plaintiff was participating in the race. He was on a closed course and cycling in the middle of the road at a high rate of speed, when the car admitted onto the course collided with him. Defendants do not admit any of this, but their moving papers on summary judgment fail to controvert it. We therefore take these matters to be established for purposes of the summary judgment motion. (See *Conn v. National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445].)

The defendants' motion for summary judgment is grounded entirely on the release signed by plaintiff, which, defendants argue, effectively barred the action against them.

## DISCUSSION

As with most summary judgment appeals, we are concerned with the existence of triable issues of material fact and whether the moving defendants were entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ Summary judgment focuses on issue finding rather than on issue determination. (*Brejcha v. Wilson Machinery, Inc.* (1984) 160 Cal.App.3d 630, 633 [206 Cal.Rptr. 688].) Because of its "drastic" nature, supporting declarations are strictly construed, and those in opposition are liberally construed. (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 285, p. 585.)

Plaintiff attacks the validity of the release on two grounds: (1) the type size of the release was too small and (2) the accident was an unexpected risk, not of the type contemplated by the releasing party. We agree with the second of these contentions.

---

[3] These parties were named as defendants in plaintiff's complaint, but were not parties to USCF's summary judgment motion and thus are not parties to this appeal.

I

Plaintiff argues that because the print size employed in the release is less than eight point, it is per se unenforceable under the holding of *Conservatorship of Link* (1984) 158 Cal.App.3d 138 [205 Cal.Rptr. 513]. We disagree.

In *Link, supra,* the appellate court dealt with a release described as five and one-half-point print that was "so small that one would conclude defendants never intended it to be read." (*Id.* at p. 141.) The critical language was contained in the third paragraph of the document, in a complicated 193-word sentence. (*Id.* at p. 143.) The court stated that "[a]s a matter of public policy, the typeface size of the crucial language in a release should be no smaller" than eight- to ten-point type generally required by the Civil Code for various contracts. (*Id.* at pp. 141, 142.)

We do not read *Link* as holding that every release printed in less than eight-point type is unenforceable as a matter of law. We believe that the *Link* case should be read in the context of the facts that it considered: a statement buried in the midst of a highly prolix sentence, which was itself surrounded by paragraphs of fine print. To the degree that *Link* may be read to state a rule of law denying effect to any release printed in less than eight-point type, regardless of other circumstances, we respectfully decline to follow it. Significant release language must be readable, and should not be so encumbered with other provisions as to be difficult to find. Print size is an important factor, but not necessarily the only one to be considered in assessing the adequacy of a document as a release.

In *Okura* v. *United States Cycling Federation* (1986) 186 Cal.App.3d 1462 [231 Cal.Rptr. 429], we held the exact bicycle racing release form at issue in this case to be enforceable. We concluded that the printed type was clear and legible, and that it did not impair the document's enforceability. "It is not buried in a lengthy document or hidden among other verbiage. The type is clear and legible and in light of the fact it has no other language to compete with, its size is appropriate. The language is clear and unambiguous and the first paragraph concludes with 'even though that liability may arise out of negligence or carelessness on the part of the persons or entities mentioned above.' " (*Id.* at pp. 1468-1469; see also *McAtee* v. *Newhall Land & Farming Co.* (1985) 169 Cal.App.3d 1031, 1033 [216 Cal.Rptr. 465].)

Reiterating our observations in *Okura,* we conclude that the subject release is sufficiently conspicuous and legible. Since the release language is practically the only language on the document, it does not have to compete

with other, less important information for the subscriber's attention. We hold that the subject release is not per se invalid because of its print size.

## II

■ To be effective, a written release purporting to exculpate a tortfeasor from future negligence or misconduct must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties. (*Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 314-315, 317-318 [195 Cal.Rptr. 90].) Language that would release a party from its own tortious conduct "must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement." (*Id.* at p. 318; see also *Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 522 [105 Cal.Rptr. 904]; *O'Connell* v. *Walt Disney World Co.* (Fla.App. 1982) 413 So.2d 444, 448.)

The Restatement Second of Torts aptly states: "In order for the agreement to assume the risk to be effective, it must also appear that its terms were intended by both parties to apply to the particular conduct of the defendant which has caused the harm. Again, where the agreement is drawn by the defendant and the plaintiff passively accepts it, its terms will ordinarily be construed strictly against the defendant." (Rest.2d Torts, § 496B, com. *d*, p. 566.) Along the same lines, Professors Prosser and Keeton observe: "If an express agreement exempting the defendant from liability for his negligence is to be sustained, it must appear that its terms were brought home to the plaintiff; and if he did not know of the provision in his contract, and a reasonable person in his position would not have known it, it is not binding upon him, and the agreement fails for want of mutual assent. *It is also necessary that the expressed terms of the agreement be applicable to the particular misconduct of the defendant,* and the courts have strictly construed the terms of exculpatory clauses against the defendant who is usually the draftsman." (Prosser and Keeton on Torts (5th ed. 1984) Assumption of Risk, ch. 11, § 68, pp. 483-484, italics added, fns. omitted.)

■ There is little doubt that a subscriber of the bicycle release at issue here must be held to have waived any hazards relating to bicycle racing that are obvious or that might reasonably have been foreseen. As plaintiff points out, these hazards include "collisions with other riders, negligently maintained equipment, bicycles which were unfit for racing but nevertheless passed by organizers, [and] bad road surfaces. . . ." On the other hand, accepting plaintiff's declaration that the course was known to be and was in fact closed to automobiles before the race (presumably when he signed the release), it is doubtful whether he or any participant would have realistically

appreciated the risk of colliding with a car traveling in any direction along the closed racecourse.

Defendants do not directly address this point. Instead, they rely on this court's earlier opinion in *Okura* v. *United States Cycling Federation, supra,* 186 Cal.App.3d 1462, for the proposition that the release language clearly covers any alleged negligence on their part. The issues in *Okura* were the legibility of the release and its validity as an adhesion contract in light of *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]. Unlike the case at bench, the scope of the release was not discussed in *Okura*. This is not surprising since, in *Okura,* the plaintiff's injuries resulted from loose debris on the racecourse (186 Cal.App.3d at pp. 1464-1465), probably as typical an example as might be supposed of a hazard reasonably foreseeable in a bicycle race conducted on city streets. It is unlikely that the hazard in the present case—a moving motor vehicle on a closed racecourse—could be so described. Nevertheless, we recognize that, conceivably, the circumstances of a bicycle race might be such that a participant should reasonably anticipate the risk of moving vehicles on the course. We hold only that defendants have not negated a triable issue of material fact on that point. Because the moving parties have not carried their burden of negating any triable issue of material fact, the summary judgment in their favor cannot stand. (*Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 120 [44 Cal.Rptr. 268].)

## DISPOSITION

The judgment is reversed. Appellant is to have costs on appeal.

Feinerman, P. J., and Hastings, J., concurred.