589 So.2d 441 (1991)
Susan BANFIELD, Appellant,
v.
Songea LOUIS, Cat Sports, Inc., etc., et al., Appellees.
Nos. 90-1233, 90-2841.
District Court of Appeal of Florida, Fourth District.
November 20, 1991.
*442 Jack H. Vital, III, Sheldon J. Schlesinger, P.A., Fort Lauderdale, and Larry Klein, Klein & Walsh, P.A., West Palm Beach, for appellant.
Bonita L. Kneeland, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee Bon's Barricades, Inc.
Anthony A. Balasso, Walton Lantaff Schroeder & Carson, Fort Lauderdale, for appellee Mike's Cyclery, Inc.
Marcia E. Levine, Fazio, Dawson, DiSalvo, Cannon, Levine, Abers & Podrecca, Fort Lauderdale, for appellees Anheuser-Busch, Quaker Oats, Intern. Swimming Hall of Fame, Triathlon Federation, Mike Eaccarino, Cat Sports, Inc. and City of Fort Lauderdale.
PER CURIAM.
This is a consolidated appeal from a final judgment entered in favor of defendants/appellees Anheuser-Busch, Inc., The Quaker Oats Company, International Swimming Hall of Fame, Inc. ("the Hall of Fame"), Triathlon Federation, U.S.A. ("the Federation"), Mike Eaccarino, CAT Sports, Inc., Mike's Cyclery, Inc., and the City of Fort Lauderdale, and a final summary judgment entered in favor of defendant/appellee, Bon's Barricades, Inc. We affirm.
*443 On April 2, 1985, appellant Susan Banfield completed and signed an "official entry form" in California to compete as a professional in the 1985 Bud Light United States Triathlon Series. The competitions were scheduled to be held in Fort Lauderdale, Texas, Los Angeles, San Francisco, Phoenix, Baltimore/Washington D.C., Portland, Detroit, Denver, Chicago, Boston, and San Diego. On Friday, May 19, 1985, two days before the Fort Lauderdale race, Banfield rode along the entire bicycle course along with some of the other entrants. The following Sunday, May 21, 1985, Banfield was operating her bicycle on Broward Boulevard in Fort Lauderdale, the designated bicycle race course, when she was struck and seriously injured by a motor vehicle owned and operated by defendant Songea Louis.
Banfield subsequently filed suit seeking to recover damages for the alleged negligence of Louis and the sponsors, organizers, and promoters of the triathlon, namely CAT Sports, Anheuser-Busch, Quaker Oats, the Hall of Fame, the Federation, Mike's Cyclery, its owner Michael Eaccarino, and the City of Fort Lauderdale. Banfield alleged that these individuals and organizations breached their duty to Banfield by failing to establish and maintain a safe bicycle course and failing to properly control traffic around the course. Banfield also named Bon's Barricades in the complaint, alleging that Bon's Barricades, as an agent or employee of the sponsors and promoters, negligently failed to properly place cones and barricades along the race course.
The defendants/appellees moved for summary judgment, alleging that no genuine issue of material fact remained for trial because Banfield signed a "release" or "waiver" of any negligence claim against the race sponsors, organizers, and promoters, as well as their agents, upon submission of her entry form. The entry form contained the names of the twelve cities where the U.S. Triathlon Series would be held during 1985, and the entrant could choose to participate in as many of these separate events as he or she wished. Banfield indicated that she wished to participate in ten of the twelve competitions. The entry form did not specify the actual dates and times that the events would be held. Banfield chose to compete in the pro division for cash and prizes rather than in the age group division for "age-group awards."
Just above the signature line, the entry form contained the following language:
WAIVER: READ CAREFULLY BEFORE SIGNING
In consideration for the acceptance of my entry, I, for my heirs, executors and administrators, release and forever discharge the United States Triathlon Series (U.S.T.S.), CAT Sports, Inc., Anheuser-Busch, the Quaker Oats Company, the city, county, state or district where the event is held and all sponsors, producers, their agents, representatives, successors and assigns of all liabilities, claims, actions, damages, costs or expenses which I may have against them arising out of or in any way connected with my participation in this event, including travel to or from this event, and including injuries which may be suffered by me before, during or after the event. I understand that this waiver includes any claims based on negligence, action or inaction of any of the above parties.
Banfield signed and dated the entry form.
The trial court concluded that the parties formed a binding contract when Banfield mailed her entry and appellees accepted the entry; consequently, the waiver provision on the entry form effectively barred her negligence claims against the sponsors, organizers, and promoters. It also ruled that a disparity in bargaining positions was "not applicable to entry of athletic contests of this nature, where a party is not required to enter it and not entitled to participate unless they want to."
Accordingly, the trial court determined that no issue of fact remained to be submitted to a jury and entered final judgment in favor of Anheuser-Busch, Quaker Oats, the Hall of Fame, the Federation, Eaccarino, CAT, Mike's Cyclery, and the City of Fort Lauderdale. It reserved ruling on Bon's Barricades' motion for summary judgment until it could hear legal argument *444 concerning whether Bon's Barricades was indeed an agent of the sponsors and thereby entitled to the benefit of the waiver agreement.
Several months later, the trial court entered final summary judgment in favor of Bon's, holding that Bon's was indeed an agent of the sponsors within the wording of the waiver; consequently, the waiver defense precluded Banfield's recovery against all of the defendants with the exception of Louis.
Banfield concedes that waiver or exculpatory clauses, although not looked upon with favor, are valid and enforceable in Florida if the intent to relieve a party of its own negligence is clear and unequivocal. L. Luria & Son, Inc. v. Alarmtec Int'l Corp., 384 So.2d 947 (Fla. 4th DCA 1980); O'Connell v. Walt Disney World Co., 413 So.2d 444 (Fla. 5th DCA 1982); Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972). We hold the instant clause to be clear and unequivocal.
No Florida court has made a distinction between exculpatory clauses contained in commercial contracts and those relating to participation in recreational or sporting activities, and the Second District Court of Appeal recently upheld an exculpatory provision as enforced against a participant in a recreational sporting event. In Theis v. J & J Racing Promotions, 571 So.2d 92 (Fla. 2d DCA 1990), rev. denied, 581 So.2d 168 (Fla. 1991), a contestant in a sprint car race held at the Florida State Fairgrounds Speedway, the "Dash for Cash," was killed when his car ran into another vehicle improperly on the track at the time of the race. The Theis court affirmed the trial court's entry of final summary judgment in favor of the promoter, the race track operator, and the driver of the other vehicle based upon a release and waiver of liability executed by the decedent because "the [release] clearly excused [the defendants] from liability for acts or omissions resulting from their own negligence." Id. at 94. See also Bruce v. Heiman, 392 So.2d 1026 (Fla. 5th DCA 1981) (racer/participant injured by "runaway" wheel at a speedway barred from recovery against speedway manager and owner's insurance carrier by virtue of a signed release of liability form).
Banfield asserts that the trial court erred in granting summary final judgment in favor of appellees because the determination of the relative bargaining positions of Banfield and appellees requires consideration of material issues of fact. We disagree. While in Ivey Plants, Inc. v. FMC Corp., 282 So.2d 205, 208 (Fla. 4th DCA 1973), cert. denied, 289 So.2d 731 (Fla. 1974), this court reversed a summary judgment and held that the determination of the parties' relative bargaining positions was a matter involving material issues of fact, the court noted that "a typical situation involving such inequality of bargaining strength is one where a public utility or a company serving some public function, as a precondition to doing business with them, requires their customer to sign a stipulation exempting the company from liability for negligence." Id. at 208-09, n. 4. In Ivey, the lessor of equipment, who sought the benefit of the exculpatory clause, allegedly maintained a monopoly over equipment essential to the processing and waxing of citrus fruit. Id.
The trial court here noted that Banfield was not required to enter the triathlon; she voluntarily chose to participate. Consequently, appellees maintain  and we agree  that the instant case is factually dissimilar to Ivey.
Other jurisdictions have rejected Banfield's argument. In Okura v. United States Cycling Federation, 186 Cal. App.3d 1462, 1468, 231 Cal. Rptr. 429, 432 (Cal.Ct. App. 1986), the court specifically rejected the appellant/participant's assertion that the trial court erred in granting summary judgment in favor of the organizers of a bicycle race because the determination of the relative bargaining positions formed a material issue of fact. The Okura court found that the exculpatory provision contained within the entry form was valid and enforceable because the racer's participation was voluntary and the organization of the race was not a transaction "affecting the public interest." Id.
The service provided herein can hardly be termed essential. It is a leisure time activity put on for people who desire to *445 enter such an event. People are not compelled to enter the event but are merely invited to take part. If they desire to take part, they are required to sign the entry and release form. The relative bargaining strengths of the parties does not come into play absent a compelling public interest in the transaction.

The transaction raises a voluntary relationship between the parties. The promoters and organizers volunteered to hold a race if the entrants volunteered to take part for a nominal fee and signature on the entry and release form. These are not the conditions from which contracts of adhesion arise.
Id. (emphasis added). See also Williams v. Cox Enterprises, Inc., 159 Ga. App. 333, 283 S.E.2d 367 (Ga.Ct.App. 1981).
With regard to exculpatory provisions, the ascertainment of the relative bargaining positions of the parties has been held, elsewhere, to form a question of fact only when the party seeking to be relieved from liability is a public utility or performs an essential public service to a large group of individuals. See Milligan v. Big Valley Corp., 754 P.2d 1063 (Wyo. 1988); Winterstein v. Wilcom, 16 Md. App. 130, 293 A.2d 821 (Md. Ct. Spec. App. 1972). Although this court's language in Ivey is open-ended, the majority of the panel there applied such reasoning to a party allegedly having a monopoly over some essential service or product, not to benefit a voluntary participant in a sporting event.
We further agree, despite Banfield's allegations that the instant release was unconscionably broad, that it was within the province of the trial court to interpret the contract and to determine, as a matter of law, that the release was not unconscionable. Peacock Constr. Co. v. Modern Air Conditioning, Inc., 353 So.2d 840, 842 (Fla. 1977).
Banfield next asserts that the question of whether a general printed release is effective to discharge tortfeasors not specifically named is a material question of fact that precludes the entry of summary judgment. In support of this proposition, Banfield relies on Hurt v. Leatherby Ins. Co., 380 So.2d 432 (Fla. 1980).
Unlike the release executed in Hurt, the waiver signed by Banfield was not drafted to reflect her after-the-fact intention to release or discharge only specific defendants from a lawsuit. More importantly, however, the instant waiver/release did not involve two types of release, one printed and one written-in, within a single pre-printed form. Therefore, it is distinguishable from the release in Hurt because it is not internally ambiguous. When Banfield signed the waiver, she knew that she was releasing all of the sponsors and promoters, as well as their agents, from liability. The Hurt rationale does not include every waiver executed in favor of both named and unnamed parties, especially when all of those parties belong to one readily discernible group or category. The Hurt court specifically found that the general release language contained within the pre-printed form was no longer necessary to protect the insurance companies from multiple judgments. The instant release contains no such internal inconsistency and/or ambiguity. Therefore, Banfield's reliance on Hurt, and the companion cases of Flanagan v. Department of Transp., 532 So.2d 714 (Fla. 2d DCA 1988), and Walls v. Ashland Oil, Inc., 424 So.2d 105 (Fla. 1st DCA 1982), rev. denied, 430 So.2d 450 (Fla. 1983), is misplaced. The waiver provision upheld in Theis, discussed earlier, was far less specific than the one at issue in the instant case.
A waiver that identifies parties by capacity is sufficient to absolve those parties from liability as a matter of law. See Etiole Int'l, N.V. v. Miami Elevator Co., 573 So.2d 921 (Fla. 3d DCA 1990) (summary judgment upheld where release purported to absolve from liability the officers, directors, and employees of a specifically named corporation); Sheen v. Lyon, 485 So.2d 422 (Fla. 1986) (waiver purporting to release a specifically named brokerage firm as well as its agents and employees from liability was sufficiently clear and unambiguous). Accordingly, even though these parties were not specifically named in the waiver provision, the trial court properly entered final summary judgment in favor *446 of: (1) Eaccarino, the Hall of Fame, and Mike's Cyclery as sponsors and/or promoters; (2) Bon's Barricades as an agent of the sponsors and/or promoters; and (3) the City of Fort Lauderdale as the "host city".
Banfield mistakenly relies on Haynes v. County of Missoula, 163 Mont. 270, 517 P.2d 370 (1973), for the proposition that it is always against public policy to relieve a governmental entity of its duty not to be negligent. The Haynes court applied the six part "public interest" test set forth in Tunkl v. Regents of the University of California, 60 Cal.2d 92, 383 P.2d 441, 32 Cal. Rptr. 33 (1963). The public interest factor will invalidate an exculpatory clause when: (1) it concerns a business of a type generally suitable for public regulations; (2) the party seeking exculpation is engaged in performing a service of great public importance, which is often a matter of practical necessity for some members of the public; (3) the party holds himself out as willing to perform this service for any member of the public who seeks it; (4) as a result of the essential nature of the service and the economic setting of the transaction, the party seeking exculpation possesses a decisive advantage in bargaining strength; (5) in exercising superior bargaining power, the party confronts the public with a standardized adhesion contract of exculpation; and (6) as a result of the transaction, the person or property of the purchaser is placed under control of the party to be exculpated. Id. at 98-100, 32 Cal. Rptr. at 37-38, 383 P.2d at 445-46.
Applying the Tunkl test to the instant case, it becomes clear that only one (or arguably two) of these factors is present. As previously discussed, the City of Fort Lauderdale, in sponsoring and/or promoting the triathlon, was not engaged in an activity of great public interest, nor was it performing a necessary service. Participation in the triathlon series was completely voluntary. Although the service performed by appellees was open to the public and appellees arguably had "control" over Banfield's person during the course of the competition, appellees posed no decisive advantage in bargaining strength. Consequently, the public was not "confronted" with a standardized adhesion contract and the City of Fort Lauderdale should receive the benefit of the waiver executed by Banfield. See Okura, Williams.
Finally, Banfield contends that this court should refuse to enforce the instant waiver because it is against the public policy of the state of Florida to allow sponsors and promoters of professional athletic events to release themselves from any responsibility for the safety of the participants. Banfield maintains that because triathlons involve bicycling at high speeds on public streets, waivers executed by participants should not be upheld because they encourage the sponsors to "cut corners" on safety. If this court upholds the instant waiver, Banfield asserts that it will simply be sending a message to the corporations that sponsor, promote, implement, and operate these triathlons, some receiving nationwide publicity for their products in so doing, that they need not take adequate precautions to protect participants. Because the public interest will be adversely affected by the subject waiver, Banfield asserts that it should be declared void as against public policy.
Although Banfield has expressed legitimate public safety concerns, "it is a matter of great public concern that freedom of contract be not lightly interfered with." Bituminous Casualty Corp. v. Williams, 154 Fla. 191, 197, 17 So.2d 98, 101 (1944). When a particular contract, transaction, or course of dealing is not prohibited under any constitutional provision, statutory provision, or prior judicial decision, it should not be struck down on public policy grounds unless it is "clearly injurious to the public good" or "contravene[s] some established interest of society." Id.
Courts, therefore, should be guided by the rule of extreme caution when called upon to declare transactions void as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it be made clearly to appear that there has been some great prejudice to the *447 dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract between parties sui juris.

Id., 17 So.2d at 101-02 (emphasis added). Additionally, courts cannot make an otherwise valid contract more reasonable from the standpoint of one contracting party. Stack v. State Farm Mut. Auto. Ins. Co., 507 So.2d 617 (Fla. 3d DCA), rev. denied, 515 So.2d 230 (Fla. 1987).
Banfield has not made a sufficient showing of "great prejudice to the dominant public interest." It seems that society, today, may be more aware than ever of the importance and fun of exercise. Yet, an infinitely small percentage of the public appear to participate presently in triathlon races. At some future date, when cultural changes produce Monday Night Triathlon, this court may well find itself hard pressed not to conclude exculpatory clauses signed by triathlon participants void as a matter of public policy.
GLICKSTEIN, C.J., and OFTEDAL, RICHARD L., Associate Judge, concur.
ANSTEAD, J., concurs in conclusion only.