977 F.2d 597
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Eric WALTON, Plaintiff-Appellant,
v.
OZ BICYCLE CLUB OF WICHITA, Defendant-Appellee.
 No. 91-3391.
 United States Court of Appeals, Tenth Circuit.
 Oct. 15, 1992.
 
 Before McKAY, Chief Judge, BRORBY, Circuit Judge, and McWILLIAMS, Senior Circuit Judge.
 ORDER AND JUDGMENT*
 McWILLIAMS, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has unanimously determined that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is, therefore, ordered submitted without oral argument.
 
 
 2
 Eric Walton filed suit in the United States District Court for the District of Kansas against the Oz Bicycle Club of Wichita (Bicycle Club), seeking damages for personal injuries sustained by him in a bicycle race conducted in Hutchinson, Kansas, under the auspices of the Bicycle Club. Jurisdiction was based on diversity of citizenship, Walton being a citizen and resident of Kentucky, the Bicycle Club being a Kansas corporation, and the amount in controversy exceeding $50,000. 28 U.S.C. § 1332.
 
 
 3
 By answer, the Bicycle Club denied liability and affirmatively alleged, inter alia, that Walton's claim was barred by a release he signed prior to the race. After discovery, the Bicycle Club filed a motion for summary judgment, supported by a memorandum to which several depositions were attached. Walton filed a memorandum in opposition to summary judgment to which the Bicycle Club filed a reply.
 
 
 4
 At the hearing, the district court granted the Bicycle Club's motion for summary judgment, holding that the release Walton signed prior to the race barred his action against the Bicycle Club. Walton appeals. We affirm.
 
 
 5
 It is agreed that prior to the bicycle race, Walton signed a release which reads, in part:
 
 
 6
 NOTICE: THIS ENTRY BLANK AND RELEASE FORM IS A CONTRACT WITH LEGAL CONSEQUENCES. READ IT CAREFULLY BEFORE SIGNING.
 
 
 7
 In consideration of the acceptance of my application for entry in the above event, I hereby freely agree to and make the following contractural [sic] representations and agreements.
 
 
 8
 I fully realize the dangers of participating in a bicycle race and fully assume the risks associated with such participation including, by way of example, and not limitation, the following: the dangers of collision with pedestrians, vehicles, other racers, and fixed or moving objects; the dangers arising from surface hazards, equipment failure, inadequate safety equipment, and weather conditions; and the possibility of serious physical and/or mental trauma or injury associated with athletic cycling competition.
 
 
 9
 I hereby waive, release and discharge for myself, my heirs, executors, administrators, legal representatives, assigns, and successors in interest (hereinafter collectively "successors") any and all rights and claims which I have or which may hereafter accrue to me against the sponsors of this event, the Oz Bicycle Club, the promoter and any promoting organization(s), property owners, law enforcement agencies, all public entities, special districts, and properties (and their respective agents, officials, and employees) through or by which the events will be held for any and all damages which may be sustained by me directly or indirectly in connection with, or arising out of, my participation in or association with the event, or travel to or return from the event.
 
 
 10
 I agree it is my sole responsibility to be familiar with the race course, the rules, and any special regulations for the event. I understand and agree that situations may arise during the race which may be beyond the immediate control of the race officials or organizers, and I must continually ride so as to neither endanger myself nor others....
 
 
 11
 I agree, for myself and successors, that the above representations are contractually binding, and are not mere recitals....
 
 
 12
 In his deposition, Walton admitted that he signed this release. Even though he had not read it carefully, Walton testified that he "knew" what was in it, having previously raced in some 20 to 30 bicycle races. Further, Walton testified in his deposition that he knew this race was over an "open course," as opposed to a "closed course"; the former being open to other traffic and the latter being closed to other traffic. As a result, Walton and the other entrants were advised to stay on the right side of the road.
 
 
 13
 The district court's recital as to how the accident occurred is as follows:
 
 
 14
 Nearing the end of the sixth lap of the seven-lap bicycle race held in Hutchinson, Kansas on August 12, 1989, Eric Walton began to pull into the lead. Closely pursued by two other racers, Walton approached the intersection of Crazy Horse and Snokomo Streets. The course of the race required the racers traveling east on Crazy Horse to make a left turn at the intersection onto Snokomo.
 
 
 15
 Leaning into the turn at about 30 miles per hour, Walton cut the northwest corner of the intersection about two feet from the curb. Flying past the corner, Walton was able to see for the first time the car stopped at the stop sign at the intersection and which had been hidden by the crowd of spectators lining Crazy Horse. Walton turned to the right to avoid the car. His bike went off the roadway, striking the open door of the van owned by the race's referee, Gaylen Medders. As a result of this accident, Walton sustained injuries which have formed the basis for the present action.
 
 
 16
 Gaylen Medders, referred to by the district court in its findings, was the person in charge of the race. Coincidentally, in avoiding one vehicle Walton went off the road and struck Medders' van, which was parked some 20 feet off the road.
 
 
 17
 As stated, the race was conducted under the auspices of the defendant, the Bicycle Club. Local sponsors, however, included Walton's employer, the Continental Cyclery, a bicycle shop in Hutchinson, Kansas. Continental Cyclery sponsored a team in the race and Walton was a member of that team.
 
 
 18
 In granting summary judgment, the district court recognized the general rule that under Kansas law "exculpatory contracts" similar to the release involved here are not favored and are strictly construed against the party relying on them. However, the district court went on to state that exculpatory contracts are not inherently void "as contrary to law," citing Mid-America Sprayers, Inc. v. United States Fire Ins. Co., 8 Kan.App.2d 451, 660 P.2d 1380 (Kan.Ct.App.1983). The district court then noted that there were apparently no reported Kansas court decisions involving releases of the present sort in a sporting events context, but cited numerous cases from other states upholding and enforcing such releases. It was on this general basis that the district court granted the Bicycle Club's motion for summary judgment and dismissed Walton's action.
 
 
 19
 On appeal, Walton's counsel argues that the injuries sustained by Walton were not "of a type reasonably contemplated by the parties at the time ... [Walton] signed the release," or, at the least, posed a question of fact that should be decided by a jury. We do not agree. The release clearly encompassed the type of injury sustained by Walton, and the manner in which it occurred. The release speaks of the danger of collision with vehicles and "fixed or moving objects," which would include the van Walton ran into. Without referring to the release line-by-line, it is clear to us that the risk Walton took during the race and his personal injury was definitely encompassed by the release he signed.
 
 
 20
 The case relied on by Walton, Bennett v. U.S. Cycling Federation, 139 Cal.App.3d 1485, 239 Cal.Rptr. 55 (Cal.Ct.App.1987), is distinguishable from the present one. In that case the race course was closed to other traffic and the entrant collided with a vehicle that had been allowed on the race course by the defendant's agents. The release in that case apparently said nothing about collisions along the race course with vehicles or fixed or moving objects. In the instant case, however, all participants knew that it was an "open course" and that they should be aware that they might encounter vehicles, moving or parked, along the route. And of course, the Bicycle Club's release specifically mentions the risk of a participant colliding with vehicles or other fixed or moving objects along the route.
 
 
 21
 We are more impressed with the rationale of such cases as Buchan v. U.S. Cycling Federation, Inc., 227 Cal.App.3d 134, 277 Cal.Rptr., 887 (Cal.Ct.App.1991), review denied, and Okura v. U.S. Cycling Federation, 186 Cal.App.3d 1462, 231 Cal.Rptr. 429 (Cal.Ct.App.1986). In each of these cases, as in the present case, a release signed by a participant in a bicycle race was enforced thereby barring an action for personal injuries sustained during the race. In Buchan the bicyclist collided with another bicyclist. In Okura the bicyclist fell when his bicycle hit loose debris on the road. Here, Walton collided with a parked vehicle.
 
 
 22
 Judgment affirmed.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3