AMERICAN STRUCTURAL COMPOS-ITES, INC., a Nevada corporation, Plaintiff,

v.

INTERNATIONAL CONFERENCE OF BUILDING OFFICIALS, a California corporation; ICBO Evaluation Services, Inc., a corporation; Resources, Applications, Designs & Controls, Inc., a Delaware corporation; and Does 1–10, Defendants.

No. CV–N–03–0093–HDM VPC.

United States District Court, D. Nevada.

June 4, 2004.

Bradley Booke, Law Office of Bradley L. Booke, Salt Lake, UT, Edward Moriari-ty, Spence Moriarity & Shockey, Wilson, WY, Shandor Badaruddin, Law Firm of Shandor S. Badaruddin, Missoula, MT, for Plaintiff.

Rick Hsu, Walther Key Maupin, et al., Robert Dotson, Laxalt & Nomura, Ltd., Reno, NV, Alfred Pfeiffer, Jr., Brian Rocca, Bingham, McCutchen Law Firm, San Francisco, CA, for Defendants.

## ORDER

MCKIBBEN, District Judge.

On December 24, 2002, Plaintiff American Structural Composites, Inc. ("ASC") filed a Complaint in state district court against Defendants International Conference of Building Officials ("ICBO"), ICBO Evaluation Services, Inc. ("ICBO–ES"), and Resources, Applications, Designs & Controls, Inc. ("RADCO"). ICBO and ICBO–ES removed the action to this court on February 18, 2003. The Complaint states multiple causes of action related to the alleged denial of certification of ASC's wall panel system. Motions for Partial Summary Judgment were filed by RADCO on January 12, 2004, and January 23, 2004, and by ASC on January 23, 2004. ICBO and ICBO–ES jointly filed a Motion for Summary Judgment on January 23, 2004. ASC filed a Motion to Postpone Consideration of RADCO's Motion for Partial Summary Judgment on February 2, 2004, and a Motion to Postpone a Portion of ICBO and ICBO–ES's Motion for Summary Judgment, on February 23, 2004. ICBO and ICBO–ES subsequently filed an Opposition to Exhibits 40–42 of ASC's Opposition to ICBO and ICBO–ES's Motion for Summary Judgment, and a Request to File Declaration of John Nosse and Attached Exhibits Under Seal, on March 19, 2004.

Among the issues in this case is the validity of the arbitration, appeal, and re-

lease clauses in the written agreements entered into by ASC, ICBO, and ICBO–ES. On July 7, 2003, this court entered an order granting the parties sixty days to engage in discovery limited to the issues raised in connection with these clauses. The deadline was ultimately extended to November 10, 2003. ASC claims in their Motions to Postpone Consideration of the Motions for Summary Judgment that they interpreted this order to stay discovery on all other issues until the court determines the validity of these clauses.

The release clause is contained in paragraph 12(f) of the "Evaluation Report or Listing Application" which Edward Nowman signed on behalf of ASC. That clause reads: "Applicant agrees that it shall have no cause of action or claim against ICBO ES or its parent corporation, the International Conference of Building Officials, Inc., or the officers, directors, members, or employees of either entity from time to time arising out of any evaluation or listing report issued pursuant to this application ... or out of any denial of this application." Exhibit A, ICBO's and ICBO–ES's Motion to Dismiss. ICBO and ICBO–ES contend that this clause releases them of all liability for any damages suffered by ASC as a result of the refusal of ICBO and ICBO–ES to certify ASC's product, and that summary judgment should therefore be entered in favor of ICBO and ICBO–ES. ASC opposes summary judgment on two grounds.[1] First, ASC contends that the release clause is unenforceable as a matter of law because contracts that exempt a person from liability for their own misconduct are a violation of the public policy of the state of California. Cal. Civ. Code § 1668. Second, ASC argues that its application for certification was never for-

mally denied, and thus the release clause was never triggered.

ICBO–ES issued a series of written notices to ASC indicating that ICBO–ES would not approve ASC's product unless ASC furnished additional information concerning the product's features. Because ASC did not furnish all necessary information, the certification was never issued, and ASC ultimately filed for bankruptcy. ASC now contends that because ICBO–ES never stated that the application process was officially and finally closed, its application was never formally denied. Rather, ASC argues that the application was an ongoing process which never terminated, but which ASC was forced to discontinue for lack of funds.

The court finds ASC's interpretation of the denial requirement unpersuasive. ASC concedes that ICBO–ES does not typically issue final denials or rejections of Application Reports. As a matter of practice, it does not issue a notice that contains the term "denial." Instead, ICBO–ES states its refusal to approve the product unless additional information is furnished, which is exactly what occurred in this case. The court finds that ICBO–ES's refusal to issue a certification when ASC failed to furnish the requested information constituted a denial of ASC's application for purposes of the release clause, thereby triggering the clause.

ASC contends that the clause is nonetheless unenforceable as a matter of law. A written release may exculpate a party from future misconduct. *Bennett v. United States Cycling Federation,* 193 Cal. App.3d 1485, 239 Cal.Rptr. 55 (1987). Release clauses are generally enforceable when they are "clear, explicit, and compre-

---

1. The arguments are based on California law pursuant to a choice of law provision in the agreement that neither party contests.

hensible." *Skrbina v. Fleming Companies*, 45 Cal.App.4th 1353, 53 Cal.Rptr.2d 481, 490 (1996). There is no public policy which opposes private, voluntary transactions in which one party agrees to assume a risk which the law may otherwise place on the other party. *Benedek v. PLC Santa Monica, LLC*, 104 Cal.App.4th 1351, 129 Cal.Rptr.2d 197 (2002) (*quoting Allan v. Snow Summit, Inc.*, 51 Cal.App.4th 1358, 59 Cal.Rptr.2d 813 (1996)).

■ To determine whether a contract is within the public interest, and therefore any release clause contained therein is prohibited under § 1668, some or all of the following conditions must be met; the contract concerns a business generally thought suitable for public regulation; the party seeking release is performing a service of great importance to the public which is often a matter of practical necessity for some members of the public; the party holds itself out as willing to perform such service for any member of the public who seeks it, or at least for any member coming within certain established standards; the party invoking the release clause possesses a decisive advantage of bargaining strength against any member of the public who seeks his services; the clause is part of a standard contract, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain additional protection; and as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents. *Tunkl v. Regents of the University of California*, 60 Cal.2d 92, 98–101, 32 Cal.Rptr. 33, 383 P.2d 441 (1963).

■ The public regulation factor is satisfied if the contract modifies "the responsibilities normally attaching to a relationship which has been regarded in other connections as a fit subject for special regulatory treatment." *Tunkl*, 32 Cal.

Rptr. 33, 383 P.2d at 445 n. 9. ASC concedes that the relationship between ICBO–ES and applicants for certification is not subject to regulation or governmental oversight of any kind. Concerning the second factor, the *Tunkl* court referred to restaurants and railroads as examples of services "of great importance to the public," and *Tunkl* involved a hospital. *Id.* at 383 P.2d at 445 n. 9–10. The *Tunkl* court "clearly had in mind medical, legal, housing, transportation, or similar services which must necessarily be utilized by the general public." *Hulsey v. Elsinore Parachute Center*, 168 Cal.App.3d 333, 214 Cal. Rptr. 194, 199 (1985). By contrast, the certification of construction products is a relatively narrow field which is used by select private companies rather than the general public, and is qualitatively different from the services cited in *Hulsey*. With respect to the third *Tunkl* factor, California courts have distinguished between providing services to the general public and providing services only to specialized commercial entities. *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal.App.3d 1, 262 Cal.Rptr. 716, 732 (1989). In this sense, the service provided by ICBO–ES is not available to the general public. In sum, the court finds that the contract between ICBO, ICBO–ES, and ASC does not implicate the public policy of the state of California as defined in *Tunkl* and its progeny.

■ The Ninth Circuit has carved out an additional exception to § 1668. The unconscionability doctrine does not apply where the parties to the agreement are sophisticated commercial entities. *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1527 (9th Cir. 1987). ASC is a sophisticated commercial entity which knew or should have known the meaning of the release clause in the agreement that it voluntarily entered into

with ICBO and ICBO–ES. Discovery has not revealed the existence of any facts demonstrating that ASC lacked sufficient business acumen to knowingly enter into the agreement, or failed to comprehend the meaning of the release clause. Although the agreement was a standard form that ICBO and ICBO–ES use for all their clients, and the terms of which ASC therefore did not negotiate, ASC nonetheless freely and knowingly consented to those terms. *Continental Airlines* cites as examples several cases in which a release clause was held enforceable against two commercial entities regardless of whether the parties had negotiated the terms. *Id.* at 1527 (citing *Geldermann & Co. v. Lane Processing, Inc.,* 527 F.2d 571, 576 (8th Cir.1975)) (unconscionability doctrine unavailable to sophisticated commodities broker); *AMF Inc. v. Computer Automation, Inc.,* 573 F.Supp. 924, 930 (S.D.Ohio 1983) (reversed on other grounds, *RB–3 Associates v. M.A. Bruder & Sons, Inc.,* 1996 WL 1609231 (S.D.Ohio 1996) (applying California law, standard form release clause not unconscionable when entered into by commercial entities engaged in the sale and purchase of computer equipment)).

 The court therefore finds the release clause enforceable against ASC. Summary judgment is granted in favor of ICBO and ICBO–ES. Having so concluded it is unnecessary for the court to address the validity of the arbitration and appeal clauses.

ASC asks the court to postpone consideration of RADCO's Motion for Partial Summary Judgment because ASC understood this court's July 7, 2003 order to stay discovery on all issues between ASC and RADCO. Although the order did not explicitly stay discovery, the court concludes that discovery should be extended 120 days from the date of entry of this order. RADCO's Motion for Partial Summary

Judgment is denied without prejudice to renew upon the completion of discovery.

Accordingly, ICBO's and ICBO–ES' Motion for Summary Judgment (# 55) is granted. ASC's Motion to Postpone Consideration of RADCO's Motion for Partial Summary Judgment (# 61)is granted. RADCO's Motions for Partial Summary Judgment (# 52 and # 57) are denied without prejudice. ASC's Motion for Summary Judgment against ICBO and ICBO–ES(# 54), and Motion to Postpone Consideration of a Portion of ICBO and ICBO–ES's Motion for Summary Judgment (# 63), are denied as moot. The Objection to Exhibits 40–42(# 83), and Request to File Declaration Under Seal (# 85) filed by ICBO and ICBO–ES, are also denied as moot.

It is so ORDERED.