J. A11016/15

2015 PA Super 273

| MICHELE VALENTINO, AS ADMINISTRATRIX OF THE ESTATE OF DEREK VALENTINO, DECEASED, AND MICHELE VALENTINO, IN HER OWN RIGHT, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellant | : | |
| v. | : | No. 3049 EDA 2013 |
| PHILADELPHIA TRIATHLON, LLC | : | |

Appeal from the Order Entered September 30, 2013,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. April Term, 2012 No. 1417

BEFORE: FORD ELLIOTT, P.J.E., OLSON AND WECHT, JJ.

OPINION BY FORD ELLIOTT, P.J.E.:                    **FILED DECEMBER 30, 2015**

Appellant, Michele Valentino (in her own right and as administratrix of the estate of Derek Valentino), appeals from an order entered on September 30, 2013, in the Civil Division of the Court of Common Pleas of Philadelphia County granting summary judgment on behalf of Philadelphia Triathlon, LLC (appellee). After careful consideration, we affirm in part, reverse in part, and remand for further proceedings.

In 2010, appellee organized an event known as the Philadelphia Insurance Triathlon Sprint (the Triathlon). Three events comprised the Triathlon: a one-half mile swim, a 15.7 mile bicycle race, and a 3.1 mile

run. (Trial court opinion, 8/14/14 at 2.) The swimming portion of the competition occurred in the Schuylkill River in Philadelphia, Pennsylvania.

To compete in the Triathlon, each participant was required to register for the event. As part of the registration process, participants paid a fee and executed a waiver and release form. Each participant had to complete and submit a registration form in order to obtain a number and bib that would be worn on the day of the race. Derek Valentino registered as a participant in the Triathlon on January 24, 2010.

On June 26, 2010, at approximately 8:30 a.m., Derek Valentino entered the Schuylkill River to begin the first part of the Triathlon. He never completed the swimming portion of the competition or any other part of the race. Tragically, the following day, on June 27, 2010, his body was retrieved from the Schuylkill River.

Appellant (Derek Valentino's widow) filed her original complaint on April 12, 2012, asserting wrongful death and survival claims against various defendants, including appellee. Thereafter, she amended her complaint on June 22, 2012. All of the defendants filed preliminary objections on June 22, 2012. On July 27, 2012, the trial court sustained the defendants' preliminary objections and struck all references in appellant's amended complaint that referred to outrageous acts, gross negligence, recklessness, and punitive damages. The court concluded that these allegations were legally insufficient since the alleged facts showed only ordinary negligence.

In addition, the court struck paragraphs 22(a), (c), (e), and (m) in the amended complaint on grounds that those averments lacked sufficient specificity. The defendants answered the amended complaint and raised new matter on August 9, 2012.

Shortly after discovery commenced, the defendants moved for summary judgment in December 2012. The trial court denied that motion on January 29, 2013. Eventually, appellant stipulated to the dismissal of all defendants except appellee. At the completion of discovery, appellee again moved for summary judgment on August 5, 2013. The trial court granted appellee's motion on September 30, 2013. Appellant sought reconsideration but the trial court denied her request. Appellant filed a timely notice of appeal on October 23, 2013. Pursuant to an order of court, appellant filed a concise statement of errors complained of on appeal in accordance with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A. Subsequently, the trial court explained its reasons for sustaining the preliminary objections in an opinion issued on March 18, 2014. In a separate opinion issued on August 14, 2014, the trial court set forth its rationale for granting appellee's motion for summary judgment.

Appellant's brief raises the following questions for our review:

> 1. Whether the [trial c]ourt erred in sustaining the [p]reliminary [o]bjections [] where, when the material facts set forth in the [a]mended [c]omplaint, as well as all reasonable inferences deducible therefrom, are accepted as true, it cannot be said with certainty that

[appellee's] actions were not sufficiently reckless, outrageous and/or egregious to warrant an award of punitive damages?

2. Whether the [trial c]ourt erred in sustaining the [p]reliminary [o]bjections [] and striking paragraph 22(a), (c), (e), and (m) of the [a]mended [c]omplaint where these averments, and the [a]mended [c]omplaint in general, were sufficiently specific to enable [appellee] to respond and prepare a defense?

3. Whether the [trial c]ourt erred in granting [appellee's] second [m]otion for [s]ummary [j]udgment where the issue of waiver and release was previously decided in the [o]rder of January 29, 2013 that denied its first [m]otion for [s]ummary [j]udgment, and the [c]ourt was precluded by the coordinate jurisdiction rule from revisiting the question?

4. Whether the [trial c]ourt erred in granting [appellee's] [m]otion for [s]ummary [j]udgment where, when the record is viewed in the light most favorable to [appellant], questions of fact remain as to whether the purported release in question was effectively executed by the decedent and, if it was, whether it was enforceable?

5. Whether the [trial c]ourt erred in granting [appellee's] [m]otion for [s]ummary [j]udgment where the report issued by Mark Mico fully and adequately addressed the questions of duty, breach of duty and causation and, in addition, he was fully qualified to render opinions in these regards?

Appellant's brief at 7-8.

Appellant's first claim asserts that the trial court erred in sustaining the preliminary objections and striking all references to outrageous acts,

gross negligence, and reckless conduct. Appellant also asserts that the trial court erred in dismissing her claims for punitive damages. The basis for these contentions is that, when the allegations set forth in the amended complaint are taken as true, the pleading asserts a claim that, "[Appellee] *intentionally* created a situation where swimmers [went] into a river with inadequate supervision and no reasonable means of rescue if they got into trouble." (Appellant's brief at 22 (emphasis in original).)

The standard of review we apply when considering a trial court's order sustaining preliminary objections is well settled:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*HRANEC Sheet Metel, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 118 (Pa.Super. 2014).

In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." ***Hutchison v. Luddy***, 870 A.2d 766, 770 (Pa. 2005), quoting ***Feld v. Merriam***, 485 A.2d 742, 747 (Pa. 1984). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." ***Hutchison***, 870 A.2d at 770. To support a claim for punitive damages, the plaintiff must show that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that the defendant acted, or failed to act, in conscious disregard of that risk. ***Id.*** at 772. "Ordinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages." ***Hutchinson v. Penske Truck Leasing Co.***, 876 A.2d 978, 983-984 (Pa.Super. 2005), ***affirmed***, 922 A.2d 890 (Pa. 2007).

Appellant's amended complaint alleges that Derek Valentino died while swimming in the Schuylkill River during the Triathlon. The amended complaint alleges further that appellee was inattentive to the needs of the contestants, failed to inspect or maintain the event course, failed to warn of or remove dangerous conditions, failed to properly plan or organize the event, failed to follow safety standards, and failed to properly train and supervise its employees. These allegations, however, averred nothing more than ordinary negligence arising from inadvertence, mistake, or error in

judgment; they do not support a claim involving outrageous behavior or a conscious disregard for risks confronted by Triathlon participants. Hence, the trial court correctly dismissed appellant's allegations of outrageous conduct and properly struck her punitive damage claims.

Appellant next asserts that the trial court erred in sustaining the preliminary objections and striking paragraphs 22(a), (c), (e), and (m) from her amended complaint. Appellant maintains that these averments are sufficiently specific to enable appellee to respond to appellant's allegations and to formulate a defense in this case.

Contrary to appellant's argument, we agree with the trial court's assessment that the challenged portions of the amended complaint are too vague and ambiguous to satisfy the requirements found in Pa.R.C.P. 1019. Under Rule 1019, "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019. "Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa.Super. 2011).

The challenged provisions of appellant's amended complaint referred only to "dangerous conditions" (¶ 22(a)), "warnings" (¶ 22(c)), "failures to reasonably plan, operate, supervise, and organize the event" (¶ 22(e)), and

"failures to employ adequate policies, procedures, and protocols in conducting the event" (¶ 22(m)) as the basis for her claim. Upon review, we concur in the trial court's determination that this boilerplate language was too indefinite to supply appellee with adequate information to formulate a defense.

Appellant cites the decision of the Pennsylvania Commonwealth Court in **Banfield v. Cortes**, 922 A.2d 36 (Pa.Cmwlth. 2007), as supportive of her contention that the amended complaint set forth material facts with sufficient specificity. **Banfield** is, however, distinguishable. In that case, a group of electors filed suit alleging that the Secretary of the Commonwealth, in certifying the use of certain electronic systems in elections, failed to adopt uniform testing procedures that addressed the security, reliability, and accuracy of voting systems. The Secretary requested an order directing the plaintiffs to re-plead their allegations with greater specificity. In rejecting this request, the Commonwealth Court explained that in challenging the adequacy of the testing features inherent in the newly adopted electronic voting systems, the plaintiffs provided sufficient facts to enable the Secretary to prepare a defense. **Id.** at 50.

Here, in contrast, appellant referred vaguely, and without elaboration, to unspecified dangerous conditions, indefinite warnings, and generic failures to reasonably plan and employ adequate policies in carrying out the Triathlon. Moreover, even if appellee possessed some knowledge of the

facts around which appellant's allegations centered, this alone would not relieve appellant of her duty to allege material facts upon which she based her claims. *See Gross v. United Engineers & Constructors, Inc.*, 302 A.2d 370, 372 (Pa.Super. 1973). Thus, appellant's reliance on *Banfield* is unavailing, and she is not entitled to relief on her second claim.

Appellant's final three claims challenge the entry of summary judgment in favor of appellee. Our standard of review over such claims is well settled.

> Th[e] scope of review of an order granting summary judgment is plenary. Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.

*Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221-1222 (Pa. 2002).

Appellant advances several arguments in support of her contention that the trial court erred in granting summary judgment. First, appellant asserts that the coordinate jurisdiction rule precluded the trial court from addressing appellee's motion since a prior summary judgment motion was

denied. Second, appellant contends that genuine issues of material fact regarding whether Derek Valentino actually executed a waiver form barred the entry of summary judgment in appellee's favor. Appellant next maintains that a plaintiff cannot contractually waive liability for reckless or intentional conduct and that, as a result, any waiver executed in this case is invalid. Appellant also asserts that, pursuant to our prior decision in ***Pisano v. Extendicare Homes, Inc.***, 77 A.3d 651 (Pa.Super. 2013), ***appeal denied***, 86 A.3d 233 (Pa. 2014), ***cert. denied***, 134 S.Ct. 2890, ___ U.S. ___ (2014), a decedent's waiver is ineffective as to third-party wrongful death claims. Lastly, appellant claims that the trial court erred in granting summary judgment because she offered the testimony of a qualified expert to address lingering questions of appellee's duty, breach of duty, and injury causation.

Upon review, we agree with the trial court that the completion of discovery and the development of a more complete record defeated application of the coordinate jurisdiction rule and eliminated any factual issues surrounding Derek Valentino's execution of a waiver prior to his registration for the Triathlon. (***See*** trial court opinion, 8/14/14 at 4 ("In the second motion for summary judgment, it is undisputed that a waiver was among the decedent's possessions, prior to being discovered in the Schuylkill River.").) Moreover, since we determined that appellant did not state claims involving reckless or intentional conduct, ***supra***, this contention

cannot serve as a basis for disturbing the trial court's ruling. However, we find appellant's argument regarding **Pisano** to be dispositive. As discussed below, we determine that appellant can maintain a wrongful death cause of action and is not bound by Derek Valentino's release, of which she was not a signatory.[1]

In **Pisano**, we addressed a similar issue in the context of an arbitration agreement. In that case, at the time of his admission to a long-term care nursing facility operated by Extendicare, the decedent, Vincent Pisano, executed an agreement providing that any dispute would be resolved by binding arbitration. **Id.** at 653. Extendicare sought to dismiss the subsequent wrongful death suit based on lack of jurisdiction. The agreement stated that "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the center [including] . . . death or wrongful death" are subject to arbitration. **Id.** at 655.

The trial court denied Extendicare's preliminary objection seeking to have the case dismissed for lack of subject matter jurisdiction, finding that a

---

[1] We note that the trial court agrees it erred in dismissing appellant's complaint in light of this court's holding in **Pisano**. (Trial court opinion, 8/14/14 at 1, 5-6.) In addition, appellee argues the matter is waived for failure to raise it in appellant's Rule 1925(b) statement; however, we find that the issue is subsumed within appellant's fourth issue, raising the enforceability of Derek Valentino's release. **See** Pa.R.A.P. 1925(b)(4)(v) ("Each error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court").

wrongful death action is a creature of statute and is independent of the decedent estate's right of action. ***Id.*** at 654.

> The trial court explained that a wrongful death action is derivative in only a very limited way: "[T]he right to the wrongful death action . . . does not depend upon the decedent's estate's rights to a survival action, but depends only upon the occurrence of the tortious act upon which it is based."

***Id.***, quoting trial court opinion, 7/9/12 at 3. Extendicare appealed, and this court affirmed, finding that the agreement was not binding on appellee, the son and administrator of Pisano's estate, as wrongful death claims are not derivative of decedents' rights under Pennsylvania law.

In so holding, this court noted that in 1911, Pennsylvania's Wrongful Death Act, 42 Pa.C.S.A. § 8301, was amended and a wrongful death action is no longer derivative of the decedent's claim; rather, the right of action belongs to the statutory claimants, not the decedent:

> Unlike its nineteenth century predecessors, Pennsylvania's wrongful death statute, as of 1911, distinguished a wrongful death action from a survival action, currently providing that "the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased." 42 Pa.C.S.A. § 8301 (1978); ***Kaczorowski v. Kalkosinski***, 321 Pa. 438, 184 A. 663, 665 (1936) (distinguishing the actions based on the 1911 version of Pennsylvania's wrongful death statute, Act of June 7, 1911, P.L. 678). Pennsylvania courts have consistently interpreted this language to mean that two separate and distinct causes of action arise from a single injury, one dependent "on the rights of action which the decedent possessed at the time of her death," and the other dependent on "the rights of action that the [claimants], as named by statute,

> possess." **Holmes v. Lado**, 412 Pa.Super. 218, 602
> A.2d 1389, 1391 n. 2 (1992); **see also**
> **Kaczorowski**, 184 A. at 665 ("By the statute there
> is given an explicit and independent right of action to
> recover the damages peculiarly suffered by the
> parties named therein."); **Matharu v. Muir**, 29 A.3d
> 375, 383 (Pa.Super. 2011) ("[A] cause of action for
> wrongful death is not the deceased's cause of
> action.").

**Id.** at 656-657.

The **Pisano** court explained that in Pennsylvania, survival and wrongful death actions are separate and distinct, and that wrongful death suits are not merely derivative of the rights of the decedent:

> The current distinction between these two claims, as explained by this Court previously, is as follows:
>
> > The survival action has its genesis in the decedent's injury, not his death. The recovery of damages stems from the rights of action possessed by the decedent at the time of death. . . . In contrast, wrongful death is not the deceased's cause of action. An action for wrongful death may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate. . . . This action is designed only to deal with the economic effect of the decedent's death upon the specified family members.

**Id.** at 658-659, quoting **Moyer v. Rubright**, 651 A.2d 1139, 1141 (Pa.Super. 1994) (in turn quoting **Frey v. Pennsylvania Electric Company**, 607 A.2d 796, 798 (Pa.Super. 1992)). **See also Amato v. Bell & Gossett**, 116 A.3d 607, 625 (Pa.Super. 2015) ("The purpose of the

Wrongful Death Statute . . . is to compensate the decedent's survivors for the pecuniary losses they have sustained as a result of the decedent's death. This includes the value of the services the victim would have rendered to his family if he had lived. A wrongful death action does not compensate the decedent; it compensates the survivors for damages which they have sustained as a result of the decedent's death." (citations omitted)).

The ***Pisano*** court explained that a wrongful death action is "derivative" of the original tort in the same way that a loss of consortium claim is derivative, in that both arise from an injury to another person. ***Id.*** at 659. However, unlike, ***e.g.***, a stockholder's derivative lawsuit or a subrogation action, loss of consortium and wrongful death claims are separate and distinct causes of action:

> We conclude that wrongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights. This conclusion aligns with the proper use of the term "derivative action" and is consistent with the Supreme Court's pronouncement in ***Kaczorowski***, which explained:
>
>> We have announced the principle that the statutory action is derivative because it has as its basis the same tortious act which would have supported the injured party's own cause of action. Its derivation, however, is from the tortious act, and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and tort-feasor.

*Id.* at 660, quoting *Kaczorowski*, 184 A. at 664. Ultimately, this court in *Pisano* determined that Extendicare's arbitration agreement was only between it and the decedent. *Id.* at 661. The appellee was not a party to the agreement, and Pennsylvania's wrongful death statute does not characterize the appellee and other wrongful death claimants as third-party beneficiaries. *Id.* Therefore, the trial court properly refused to compel arbitration. *Id.*[2]

Among other cases, this court in *Pisano* cited as supporting authority our supreme court's decision in *Buttermore v. Aliquippa Hospital*, 561 A.2d 733 (Pa. 1989). *Pisano*, 77 A.3d at 658. We likewise find *Buttermore* to be instructive. In that case, James Buttermore was involved in an automobile accident, sustaining injuries. *Buttermore*, 561 A.2d at 734. He signed a release in settlement of his claim against the tortfeasor for the sum of $25,000, agreeing to release from liability any and all persons, known or unknown. *Id.* Subsequently, Buttermore and his wife instituted suit against Aliquippa Hospital and the treating physicians alleging that the treatment he received aggravated the injuries he sustained in the accident,

---

[2] Following *Pisano*, in *Taylor v. Extendicare Health Facilities, Inc.*, 113 A.3d 317 (Pa.Super. 2015), *appeal granted*, 122 A.3d 1036 (Pa. 2015), this court held that an arbitration agreement signed by the decedent or his or her authorized representative is not binding upon non-signatory wrongful death beneficiaries. *Id.* at 320-321. The *Taylor* court further held that Pa.R.C.P. 213(e) required consolidation of the wrongful death and survival actions, and since the wrongful death beneficiaries cannot be compelled to arbitrate the wrongful death actions, both must remain in court.

worsening his condition. *Id.* at 734-735. The defendants moved for summary judgment on the basis of Buttermore's release. *Id.* at 735.

After first holding that the release applied to all tortfeasors, including the defendants, whether specifically named or not, the court in ***Buttermore*** turned to the matter of Buttermore's wife's loss of consortium claim: "That is not to say, however, that parties may bargain away the rights of others not a party to their agreement. That question rises here because a spouse not a party to the agreement seeks to sue in her own right for loss of consortium." *Id.* at 735. The ***Buttermore*** court held that the wife had an independent cause of action for loss of consortium regardless of her husband's settlement agreement: "The question is, does the wife, not a signatory to the agreement, have an independent right to sue for the injury done her. We answer that she does." *Id.* at 736. ***See also Pisano***, 77 A.3d at 658, citing ***Pennsylvania Railroad Co. v. Henderson***, 51 Pa. 315, 317 (1866) ("This suit is brought by the widow, and her right of action cannot be affected by any discharge or release of [husband] in his lifetime.").

Similarly, in ***Brown v. Moore***, 247 F.2d 711 (3rd Cir. 1957), ***cert. denied***, 355 U.S. 882 (1957), the plaintiff, the widow and executrix of George Brown, brought a cause of action under the Wrongful Death Act for the benefit of herself and her three minor children, as well as a Survival Act claim. *Id.* at 714. Brown, a neurotic, was admitted to a sanitarium for

treatment including electrical shock therapy, following which he fell down a flight of stairs. *Id.* at 715. After the fall, Brown was picked up by his extremities, with his head hanging down, resulting in paralysis. *Id.* Brown had signed a release agreeing to release the sanitarium and its employees from liability for any injury resulting from his treatment as a neurotic while at the sanitarium, including electro-shock therapy or treatment of a similar nature. *Id.* at 722. After concluding that Brown's treatment following his fall down the stairs was unrelated to his treatment as a neurotic by electro-shock therapy or other similar therapeutic means, the ***Brown*** court stated,

> [W]e point out that even if the release were deemed sufficient to relieve the defendants of liability under the Pennsylvania Survival Act is [sic] could scarcely relieve them of liability under the Pennsylvania Wrongful Death Act for that Act provides benefits not only for the widow of a deceased person but also for his children. Even assuming that the release was effective as to the plaintiff, who executed it as did Brown, nonetheless Brown's children would be entitled to a recovery.

***Id.***[3]

---

[3] Brown was disapproved of by ***Grbac v. Reading Fair Co.***, 688 F.2d 215 (3rd Cir. 1982). However, ***Grbac*** was criticized by this court in ***Pisano***:

> In ***Grbac***, the court of appeals held that a liability release executed by decedent was binding on the widow's wrongful death claim. *Id.* at 217-218. Erroneously following the Pennsylvania Supreme Court's holding in [***Hill v. Pennsylvania Railroad Company***, 35 A. 997 (Pa. 1896)], the court of appeals misinterpreted Pennsylvania law in holding

Relying on California law, appellee argues that even if appellant can bring the wrongful death action, appellee had no duty to the decedent because of his complete waiver. (Appellee's brief at 38-39.) Appellee argues that the decedent agreed to waive liability and assume all risks inherent to the dangerous activity of sprint triathlon; therefore, appellee owed the decedent no duty to protect him from injury. (*Id.* at 40.) According to appellee, even assuming appellant can sue for wrongful death, she cannot possibly recover where appellee has a complete defense. (*Id.* at 40-41.)

California state law in this area was recently summarized by the California court of appeals in *Eriksson v. Nunnink*, 233 Cal.App.4th 708, (Cal.App. 4 Dist. 2015):

> Because a wrongful death claim is not derivative of the decedent's claims, an agreement by the decedent to release or waive liability for her death does not necessarily bar a subsequent wrongful death cause of action by her heirs. (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1402, p. 825.) As explained in *Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 250 Cal.Rptr. 299, in which the decedent signed an agreement purporting to release, discharge, and waive any

that a "wrongful death action is purely derivative" in Pennsylvania. *Id.* at 217. The *Grbac* Court cites no further cases in support of its holding, and no binding Pennsylvania authority exists with a similar holding. In fact, the limited authority on this subject indicates the opposite conclusion of *Grbac*.

*Pisano*, 77 A.3d at 658.

cause of action for wrongful death, "it is clear that [decedent] had no power or right to waive that cause of action on behalf of his heirs. [Citation.] This is a right which belongs not to [decedent] but to his heirs. 'The longstanding rule is that a wrongful death action is a separate and distinct right belonging to the heirs, and it does not arise until the death of the decedent.' [Citation.]" (*Id.* at p. 596, 250 Cal.Rptr. 299.)

*Id.* at 248.

Although Mia could not release or waive her parents' subsequent wrongful death claims, it is well-settled that a release of future liability or express assumption of the risk by the decedent may be asserted as a defense to such claims. (*See*, *e.g.*, *Horwich v. Superior Court*, *supra*, 21 Cal.4th at p. 285, 87 Cal.Rptr.2d 222, 980 P.2d 927; *Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 755, 29 Cal.Rptr.2d 177; *Saenz v. Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758, 763–764, 276 Cal.Rptr. 672.) As the *Madison* court explained: "[A] distinction must be made between the legal *ineffectiveness* of a decedent's preinjury release of his heirs's subsequent wrongful death action and the legal *effectiveness* of an express release of negligence by a decedent which provides a defendant with 'a complete defense.' [Citation.]" (*Madison v. Superior Court*, *supra*, 203 Cal.App.3d at p. 597, 250 Cal.Rptr. 299; *see also Ruiz v. Podolsky*, *supra*, 50 Cal.4th [838] at pp. 851–852, 114 Cal.Rptr.3d 263, 237 P.3d 584 [(2010)] ["although an individual involved in a dangerous activity cannot by signing a release extinguish his heirs' wrongful death claim, the heirs will be bound by the decedent's agreement to waive a defendant's negligence and assume all risk."].)

*Id.* at 249 (emphasis in *Madison*). Appellee in the case *sub judice* urges

this court to adopt a similar approach. However, we view the *Madison* line

of cases as creating a distinction without a difference, *i.e.*, a wrongful death

- 19 -

claimant can bring suit but will inevitably lose on summary judgment because of the decedent's waiver of liability, to which the wrongful death claimant was not a party. Such a holding would effectively eviscerate the Pennsylvania wrongful death statute which creates an independent and distinct cause of action, not derivative of the decedent's rights at time of death. We believe the better approach is outlined by the New Jersey Superior Court in **Gershon v. Regency Diving Center, Inc.**, 845 A.2d 720 (N.J.Super. 2004), which explicitly rejected **Madison** and its progeny, aptly describing **Madison**'s holding as "internally inconsistent." **Id.** at 725.[4] In **Gershon**, the decedent was a scuba diver and signed up for advanced diving training. **Id.** at 723. As a condition of his participation, he executed a release agreement. **Id.** The decedent expressly waived liability, including for wrongful death, and assumed all risk. **Id.** The lower court held that while the exculpatory release signed by the decedent barred any survivorship claim which could have been asserted by his estate, it did not preclude an independent wrongful death action where the decedent's heirs had not signed the agreement. **Id.** at 724. Relying on **Madison**, **supra**, the defendant, Regency Diving Center, argued that the release operated as a complete bar to all claims. **Id.** On appeal, the Superior Court of

---

[4] "Although we acknowledge that the pronouncements of sister states are not binding authority on our courts, such decisions may be considered as persuasive authority." **Shedden v. Anadarko E&P Co., L.P.**, 88 A.3d 228, 233 n.3 (Pa.Super. 2014), **appeal granted on other grounds**, 97 A.3d 741 (Pa. 2014) (citation omitted).

New Jersey, Appellate Division, rejected the **Madison** line of cases as against the public interest intended to be protected by the Wrongful Death Act:

> [T]he intended beneficiaries of the Act are deprived of their statutorily authorized remedy merely to provide defendants with an environment from which to operate their business, apparently free from the risk of litigation. Such a prospect would directly undermine the remedial purpose of the Act. Stated differently, even if decedent had the legal authority to bargain away the statutory right of his potential heirs, society's interest in assuring that a decedent's dependents may seek economic compensation in a wrongful death action outweighs decedent's freedom to contract.

**Id.** at 728.[5] The **Gershon** court also noted that until a decedent has died, there are no heirs; therefore, their rights cannot be extinguished by an agreement that predates their existence:

> It is well settled that a person's heirs are not defined until the time of his or her death. **Reese v. Stires**, 87 N.J. Eq. 32, 35, 103 A. 679 (N.J.Ch.1917); **In re Bartles**, 33 N.J. Eq. 46 (1880). This fundamental tenet of the law of wills and estates is best expressed by the ancient maxim **nemo est haeres viventis**, "[n]o one can be heir during the life of his ancestor." Black's Law Dictionary 936 (5th ed. 1979). **See also** 4 Page on Wills § 34.6 (Bowe-Parker rev.3d ed.1961). It is therefore legally impossible for an exculpatory agreement to bar the legal claims of a class of litigants that were not legally in existence at the time of its execution.

---

[5] As in New Jersey, in Pennsylvania, exculpatory agreements are not favored by the law and must not contravene public policy. **Id.** at 726-727; **Tayar v. Camelback Ski Corp., Inc.**, 47 A.3d 1190 (Pa. 2012).

***Id.*** Appellee argues that allowing third-party claims including loss of consortium and wrongful death where the decedent expressly assumed the risk of injury would expose insurers to increased liability. (Appellee's brief at 35-36.) The court in ***Gershon*** addressed those concerns as follows:

> We recognize that our decision today may prevent insurance carriers from obtaining complete releases from all possible wrongful death claims, except perhaps by the inclusion in any such agreement of all persons who subsequently are determined to be wrongful death beneficiaries under N.J.S.A. 2A:31-4. The policy favoring settlement and finality of claims, cannot defeat statutory rights created for the protection of survivors of one wrongfully killed.

***Id.*** at 728-729, quoting ***Alfone v. Sarno***, 432 A.2d 857 (N.J. 1981) (citations omitted).

Following ***Pisano***, we conclude that Derek Valentino's release agreement did not bind appellant and did not preclude her from bringing a wrongful death action. ***Pisano*** is clear that a wrongful death action is an independent cause of action, created by statute, and is not derivative of the decedent's rights at time of death. Furthermore, we reject appellee's argument that the decedent's waiver of liability and assumption of the risk can be used as a complete defense to appellant's claims. The release agreement was only between the decedent and appellee and has no effect on the decedent's non-signatory heirs including appellant.

Finally, we turn to appellant's issue regarding the expert report of Mark Mico ("Mico"). Mico is an experienced triathlete, race director, and

race management consultant. (Appellant's brief at 50.) In his report, Mico stated that, *inter alia*, appellee did not have enough lifeguards and allowed too many swimmers in each wave. (*Id.* at 51.) Contestants were not permitted to wear buoyant wetsuits and there was no safety instruction provided. (*Id.* at 51-52.) Swimmers were given black swimming caps which were a poor choice for visibility in the open water. (*Id.* at 51.) Lifeguards were mostly swimming pool lifeguards and were not trained in open water safety. (*Id.* at 52.) Mico concluded that appellee's negligent conduct caused Derek Valentino's drowning. (*Id.* at 53.)

Appellee argues that Mico's opinion was unsupported by any applicable industry standard. (Appellee's brief at 45.) According to appellee, Mico's report is based on his own personal and retrospective views on how the event should have been organized. (*Id.* at 47.) Appellee also argues that Mico failed to explain how appellee's alleged breach of duty proximately caused the decedent's death. (*Id.* at 48.) Appellee contends that Mico's expert report represents a post-hoc, personal opinion and is insufficient to establish a *prima facie* case of negligence. (*Id.* at 49.)

The trial court granted summary judgment for appellee based on waiver. As such, the trial court did not consider the issue of Mico's expert report, nor is it discussed in the trial court's Rule 1925(a) opinion. As there is no ruling on the matter, we decline to address it for the first time on appeal. The trial court may consider this issue on remand.

Affirmed in part and reversed in part. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Wecht, J. joins the Opinion.

Olson, J. files a Dissenting Opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2015