[No. B033331. Second Dist., Div. Three. Aug. 4, 1988.]

NORMAN MADISON et al., Petitioners, v.
THE SUPERIOR COURT OF THE COUNTY OF LOS ANGELES,
Respondent;
SULEJMAN SULEJMANAGIC et al., Real Parties in Interest.

**COUNSEL**

Wood, Lucksinger & Epstein, Steven Brower and Mitchell B. Ludwig for Petitioners.

No appearance for Respondent.

Glickman & Glickman and Steven C. Glickman for Real Parties in Interest.

## OPINION

CROSKEY, J.—Petitioners Norman Madison (Madison) and YMCA of Metropolitan Los Angeles (YMCA)[1] (collectively defendants) are defendants in a wrongful death action filed by Sulejman Sulejmanagic and Maida Sulejmanagic (hereinafter Plaintiffs). They are before this court seeking a writ of mandate directing the trial court (1) to vacate its order denying their motion for summary judgment and (2) to enter a new and different order granting that motion. As we conclude that no triable issue of material fact exists with respect to the scope and legal effect of the pre-accident waiver and release given by plaintiffs' decedent and that by reason of such waiver and release the defendants, as a matter of law, have no liability to plaintiffs, we grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' son, Ken Sulejmanagic (Ken) drowned on November 15, 1986, while participating in a YMCA scuba diving training course. He was 19 years old at the time. Ken enrolled in the course on July 29, 1986, and completed the course except for one missed dive. He therefore had not received his Openwater I Certification. On November 15, 1986, he was participating in a makeup dive, which was also to be his final checkout, when the fatal accident occurred.

Ken and a recently certified student named Robbins went on the dive with one of YMCA's instructors, Rene Rojas (Rojas).[2] When Ken ran low on air during the dive Rojas accompanied him to the surface and directed him to swim toward a buoy that had been anchored prior to the commencement of the dive. Rojas then left Ken alone on the surface to continue the dive with Robbins. About 10 minutes later, when Rojas and Robbins surfaced, Ken was nowhere to be found. A search was commenced and Ken's body was located on the bottom.

When Ken had enrolled in the course on July 29, 1986, he was asked to and did sign a document entitled "NAUI Waiver, Release and Indemnity

---

[1] YMCA of Metropolitan Los Angeles was erroneously sued herein as the "YMCA." It is the same entity and organization described in the subject Waiver, Release and Indemnity Agreement as "Westchester YMCA."

[2] Rojas is also a named defendant who has appeared separately herein. Although he joined in the motion for summary judgment he has not, for reasons not disclosed by the record, joined in the subject petition. However, since it is not disputed that he at all times was the agent and employee of YMCA, and acting within the course and scope of that agency and employment, he is entitled to the legal protection of the release and waiver to the same extent as YMCA even though not specifically named therein.

Agreement."[3] This agreement (hereinafter the agreement), which contains language of waiver, release and indemnity, served as the basis for defendants' motion for summary judgment. The relevant portions of the agreement provide as follows: "For and in consideration of permitting (1) *Ken Salejmanagie* [*sic*] to enroll in and participate in diving activities and class instruction of skin and/or scuba diving given by (2) *Norman Madison/Westchester YMCA* . . . the Undersigned hereby voluntarily releases, discharges, waives and relinquishes any and all actions or causes of action for personal injury, property damage or wrongful death occurring *to* him/herself arising as a result of engaging or receiving instructions in said activity or any activities incidental thereto wherever or however the same may occur and for whatever period said activities or instructions may continue, and the Undersigned does for him/herself, his/her heirs, executors, administrators and assigns hereby release, waive, discharge and relinquish any action or causes of action, aforesaid, which may hereafter arise for him/herself and for his/her estate, and agrees that under no circumstances will he/she or his/her heirs, executors, administrators and assigns prosecute, present any claim for personal injury, property damage or wrongful death against (2) *Norman Madison/Westchester YMCA* or any of its officers, agents, servants or employees for any of said causes of action, whether the same shall arise by the negligence of any of said persons, or otherwise. IT IS THE INTENTION OF (1) _____[4] BY THIS INSTRUMENT, TO EXEMPT AND RELIEVE (2) *Norman Madison/Westchester YMCA* FROM LIABILITY FOR PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE."

The agreement concludes with the following acknowledgment: "The Undersigned acknowledges that he/she has read the foregoing two paragraphs, has been fully and completely advised of the potential dangers incidental to engaging in the activity and instructing of skin and/or scuba diving, and is fully aware of the legal consequences of signing the within instrument."

Plaintiffs filed this action on February 3, 1987. The defendants answered and later, on November 16, 1987, filed a motion for summary judgment. The motion was heard on February 5, 1988, and, on February 29, the court filed an order denying it. The court found that triable issues of fact existed as to whether (1) the release and waiver agreement constitutes an "express assumption of all risks" so as to bar plaintiffs' wrongful death claim, (2) the

---

[3] A copy of this document is attached as an Appendix to this opinion. It was prepared by the National Association of Underwater Instructors (NAUI).

[4] This space was apparently inadvertently left blank. However, no issue is made here that Ken did not freely and voluntarily sign the agreement nor is there any dispute that it was the intent and understanding of all parties, including Ken, that his name should have been inserted at this point.

"potential dangers incidental to engaging in the activity and instructing of skin and/or scuba diving" were fully and completely disclosed to Ken so as to have enabled him to make a knowing waiver of his or his heirs' rights and (3) the occurrence which proximately caused Ken's death was one that was obvious, or might have been reasonably foreseen by Ken to be within the "potential dangers incidental to . . . scuba diving."

Defendants now seek a writ of mandate to vacate the trial court's order and to compel instead entry of judgment in their favor on the ground that no triable issue of material fact exists with respect to the effect of the agreement and that, as a matter of law, it provides a complete defense to plaintiffs' action.

## DISCUSSION

While the record does not disclose precisely how or why Ken lost his life, the declaration of Rojas reveals that when he and Robbins surfaced about 10 minutes after Ken was left alone they were approached by another diver who asked if "they had been the ones yelling for help." This suggests that somehow Ken developed a problem while trying to swim to the buoy as instructed by Rojas. In any event, it is clear that plaintiffs' theory against the defendants is that they were negligent in failing to observe the "buddy system" by making sure that Ken was not left alone at any time. They argue that had someone else been with Ken that person could have come to his aid and perhaps have prevented this unfortunate tragedy.

On these facts, and for the purpose of our decision, we take it as established that, but for the provisions of the agreement, defendants' actions would constitute an act of negligence which proximately resulted in Ken's death and for which they would be liable. The critical question, however, is whether the agreement absolves defendants, in spite of their actions, from any liability to the plaintiffs.

Code of Civil Procedure section 437c, subdivision (c), provides that a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As we explain below, of the three issues found by the trial court, the first really is an issue of law, given the undisputed facts presented, and the other two raise no triable issues of material fact in view of the provisions of the agreement. ■■ ■■ ■■ ■■ Our de novo examination of the moving and opposing papers, including the affidavits, demonstrates to us that no genuine issue of material fact has been raised as to the terms of the

agreement or to the circumstances under which it was executed.[5] We thus may determine whether, by virtue of the agreement, the defendants are entitled to judgment as a matter of law. (*D'Aquisto* v. *Campbell Industries* (1984) 162 Cal.App.3d 1208, 1212 [209 Cal.Rptr. 108].)

### 1. *The Release Could Not Operate to Limit Plaintiffs' Right to Prosecute a Wrongful Death Action*

As this is a wrongful death case, we must deal first with the issue of Ken's purported "release" of plaintiffs' wrongful death claim. Although the agreement expressly purports to release and discharge any action for wrongful death, it is clear that Ken had no power or right to waive that cause of action on behalf of his heirs. (*Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399 [239 Cal.Rptr. 916].) This is a right which belongs not to Ken but to his heirs. "The longstanding rule is that a wrongful death action is a separate and distinct right belonging to the heirs, and it does not arise until the death of the decedent. (*Earley* v. *Pacific Electric Ry. Co.* [1917], 176 Cal. [79, 81] [167 P. 513].) Since *Earley* the courts have consistently articulated this principle and have validated it in a variety of circumstances. (See, e.g., *Garcia* v. *State of California* (1967) 247 Cal.App.2d 814, 816 [56 Cal.Rptr. 80] [fact that prisoner is barred from suit alleging injuries from dangerous condition is no bar to action for wrongful death by surviving spouse]; *Blackwell* v. *American Film Co.* (1922) 189 Cal. 689, 693-694 [209 P. 999] [prior judgment in favor of decedent for injuries does not bar later action for wrongful death]; *Marks* v. *Reissinger* (1917) 35 Cal.App. 44, 54 [169 P. 243] [statute of limitations runs from date of death, not injury of decedent].)" (*Id.,* at p. 1403.)

In *Scroggs* (which also involved a scuba diving death), the court reversed the trial court's summary judgment on the ground that the release given by the decedent to Coast Community College did not, by its terms, indicate an intention on decedent's part to assume all risks of the activity nor did it encompass a waiver of the defendant's negligence. Thus, it provided no protection to the defendants and since the decedent's purported release of the heirs' wrongful death action was ineffective, the judgment in favor of defendants could not stand.

---

[5] There is nothing in this record to suggest that Ken would not be bound by the terms of this agreement or that he did not realize what he was signing or was somehow misled as to the significance and import of the terms of the agreement. "It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it. [Citations.]" (*Hulsey* v. *Elsinsore Parachute Center* (1985) 168 Cal.App.3d 333, 339 [214 Cal.Rptr. 194].) There is no evidence here of any fraudulent or other conduct on the part of the defendants which would provide a basis for avoiding the agreement.

However, the court recognized that a plaintiff in a wrongful death action is subject to any defenses which could have been asserted against the decedent, including an express agreement by the decedent to waive the defendant's negligence and assume all risks. In other words, a distinction must be made between the legal *ineffectiveness* of a decedent's preinjury release of his heirs's subsequent wrongful death action and the legal *effectiveness* of an express release of negligence by a decedent which provides a defendant with "a complete defense." (*Scroggs* v. *Coast Community College Dist., supra,* 193 Cal.App.3d at p. 1402.)

## 2. *Ken Assumed the Risk of Injury and Thereby Relieved Defendants of Any Duty to Him*

■ The release signed by Ken does not suffer from the drafting infirmities found in *Scroggs.* Although the words "assumption of the risk" are not specifically used, it is clear that Ken expressly acknowledged his intent to do just that. In heavy bold type the release expressly states that it was Ken's intent to exempt and relieve the defendants from any liability for their *negligence.* By this language Ken expressly manifested his intent to relieve the defendants of any duty to him and to assume the entire risk of any injury. ■ " 'In its most basic sense, assumption of risk means that the plaintiff, in advance, has given his *express* consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone. [Fn. omitted.] . . . The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence.' (Prosser & Keeton, Torts (5th ed. 1984) § 68, pp. 480-481, italics in original.)" (*Coates* v. *Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1, 8 [236 Cal.Rptr. 181], fn. omitted.)[6]

We cannot distinguish this case from *Coates.* Apart from a specific reference in the *Coates* release to the voluntary assumption of all risks, the language used there is substantially identical to that which was used in the waiver and release form signed by Ken. In our view, this difference is not critical. ■ As long as the release constitutes a clear and unequivocal waiver with specific reference to a defendant's negligence, it will be sufficient. *Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 518-519 [105 Cal.Rptr. 904]; Prosser & Keeton, Torts (5th ed. 1984)

---

[6]This is essentially the definition of express assumption of the risk which is contained in BAJI No. 4.30 (7th ed. 1986): "If, prior to an event in which the plaintiff was injured as a result of defendant's negligence, the plaintiff had expressly assumed the risk of such injury by specifically agreeing with the defendant that he, the plaintiff, would not hold the defendant responsible if an injury should be caused by the defendant's negligence, the plaintiff may not recover damages from the defendant for that injury."

§ 68, p. 484.) For it to be valid and enforceable, a written release exculpating a tortfeasor from liability for future negligence or misconduct must be clear, unambiguous and explicit in expressing the intent of the parties. (*Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 314-315, 317-318 [195 Cal.Rptr. 90].) If a tortfeasor is to be released from such liability the language used "must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement." (*Id.* at p. 318.)

Plaintiffs argue, and the trial court found, that there is an issue of fact with respect to this question. We disagree. ▪ Whether a contract provision is clear and unambiguous is a question of law, not of fact. (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13]; *Hulsey* v. *Elsinore Parachute Center, supra,* 168 Cal.App.3d at p. 340.) ▪ Our examination of the agreement compels the conclusion that it was clear and free from ambiguity. It would be difficult to imagine language more clearly designed to put a layperson on notice of the significance and legal effect of subscribing to it. The emphasized references to the exemption and relief from "liability for personal injury, property damage or wrongful death caused by negligence" could not be more explicit.

Moreover, we perceive of no reason why Ken could not validly execute such a broad agreement. ▪ "[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . ." (*Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].) Civil Code section 1668 provides that "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." However, "Despite its broad language, section 1668 does not apply to every contract." (*Vilner* v. *Crocker National Bank* (1979) 89 Cal.App.3d 732, 735 [152 Cal.Rptr. 850].) "It will be applied only to contracts that involve 'the public interest.' [Citations.]" (*Cregg* v. *Ministor Ventures* (1983) 148 Cal.App.3d 1107, 1111 [196 Cal.Rptr. 724].)

"In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. [1] It concerns a business of a type generally thought suitable for public regulation. [2] The party

seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (*Tunkl* v. *Regents of University of California, supra,* 60 Cal.2d at pp. 98-101, fns. omitted.)

The court in *Kurashige* v. *Indian Dunes, Inc.* (1988) 200 Cal.App.3d 606 [246 Cal.Rptr. 310], concluded that a release signed by motorcycle dirt-bike riders did not involve a public interest. The court, in language equally applicable here, stated that the release ". . . agreement used here was printed legibly, contained adequate, clear and explicit exculpatory language and indicated defendants were to be absolved from the consequences of their own negligence. . . . Furthermore, it did not involve the public interest: defendants' business was not generally thought to be suitable for public regulation; defendants did not perform a service of great importance to the public, and the business was not a matter of practical necessity for members of the public; and defendants' customers did not place their persons under defendants' control. [Citation.]" (*Id.*, at p. 612.)

It thus seems clear, absent a public interest involvement, that Civil Code section 1668 will not invalidate contracts which seek to exempt one from liability for simple negligence or strict liability. This is such a case. Here, Ken certainly had the option of not taking the class. There was no practical necessity that he do so. In view of the dangerous nature of this particular activity defendants could reasonably require the execution of the release as a condition of enrollment. Ken entered into a private and voluntary transaction in which, in exchange for an enrollment in a class which he desired to take, he freely agreed to waive any claim against the defendants for a negligent act by them. This case involves no more a question of public interest than does motorcross racing (*McAtee* v. *Newhall Land & Farming Co.* (1985) 169 Cal.App.3d 1031 [216 Cal.Rptr. 465]), sky diving (*Hulsey* v. *Elsinore Parachute Center, supra,* 168 Cal.App.3d 333), or motorcycle dirt-bike riding (*Kurashige* v. *Indian Dunes, Inc., supra,* 200 Cal.App.3d 606).

Therefore, we conclude that the agreement is enforceable and, as against any action brought by Ken, would have served as *"a complete defense."* It had the obviously intended legal effect of shifting the responsibility for any negligence by the defendants from the defendants to Ken. By this agreement, Ken effectively assumed all of the risks of any injury he might suffer as a result of defendants' negligence during the training course.

This defense may also be asserted here against the plaintiffs. ■ "It is axiomatic that a plaintiff in a wrongful death action is subject to defenses which could have been asserted against the decedent. (See, e.g., *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 552 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158] [contributory negligence]; *Barnett* v. *Garrison* (1949) 93 Cal.App.2d 553, 557 [209 P.2d 426] [assumption of the risk]; *Nakashima* v. *Takase* (1935) 8 Cal.App.2d 35, 38 [46 P.2d 1020] [justifiable homicide].)" (*Scroggs* v. *Coast Community College Dist., supra,* 193 Cal.App.3d at pp. 1402-1403.)

■ We therefore determine that the legal effect of the release and waiver provisions of the agreement is to provide to defendants "a complete defense" to plaintiffs' action.[7] As a result, no triable issue of fact has been raised with respect to the legal meaning or effect of the agreement and summary resolution of this issue in defendants' favor was required.

### 3. *Ken's Express Waiver and Release Was Sufficient to Cover the Particular Risk of Injury Which Resulted in His Death*

■ The other two issues of fact found by the trial court relate to (1) the extent of Ken's knowledge or appreciation of all the risks to which he would be exposed and (2) whether the risks of the particular act of negligence which proximately resulted in his death were reasonably foreseen by him so as to be fairly encompassed by the agreement. Neither of these questions needs detain us long. We conclude that the defendants' negligence here *was* reasonably foreseeable and the fact that Ken may not have specifically discussed or anticipated it does not alter that conclusion.

Plaintiffs seek to demonstrate the existence of a triable issue by evidence of just what "potential dangers" were actually discussed with Ken and his fellow class members. That evidence indicates that the possibility of instruc-

---

[7]This case thus illustrates the essential compatibility of *Coates* and *Scroggs*. In *Coates,* the decedent's release provided defendant with a complete defense to the action itself (as opposed to a simple waiver of a future right to sue) whereas in *Scroggs* it did nothing more than purport to release a right which decedent did not own, a result which *Scroggs* properly refused to sanction.

tor negligence was never mentioned. However, it was not necessary that such a specific discussion have taken place.

Given the express provisions of the agreement, the law imposes no requirement that Ken have had a specific knowledge of the particular risk which resulted in his death. Under the agreement Ken clearly accepted responsibility for the consequences of any act of negligence by the defendants. ■■ As the court noted in *Coates* v. *Newhall Land & Farming, Inc., supra,* 191 Cal.App.3d at page 9, ". . . knowledge of a particular risk is unnecessary when there is an express agreement to assume all risk; by express agreement a 'plaintiff may undertake to assume all of the risks of a particular . . . situation, *whether they are known or unknown to him*.' (Rest. 2d Torts § 496D, com. a, italics added; Prosser & Keeton, Torts (5th ed. 1984) § 68, p. 482.)" (Fn. Omitted.)[8] ■■ Therefore, plaintiffs can claim no triable issue with respect to whether there was a specific discussion of, or disclosure about, the particular risk that resulted in his death (i.e., the defendants' failure to follow the "buddy system" rule). Whether Ken knew about that specific possibility at the time he signed the release is irrelevant.

Similarly, there can be no issue with respect to whether such negligence on defendants' part was reasonably foreseeable by Ken or reasonably within the potential dangers to which the release is applicable. ■■ While it is true that the express terms of any release agreement must be applicable to the particular misconduct of the defendant (Prosser & Keeton on Torts (5th ed. 1984) § 68, pp. 483-484), that does not mean that every possible specific act of negligence of the defendant must be spelled out in the agreement or even discussed by the parties. ■■ Where, as here, a clear unambiguous release of all liability for *any* act of negligence has been given, then it is, by definition, "applicable" to the defendant's negligent act, whatever that act may have been. ■■ It is only necessary that the act of negligence, which results in injury to the releasor, be reasonably related to the object or purpose for which the release is given.[9] Here, that object or purpose was a training course in scuba diving. ■■ ■■ ■■ The negligence of the defendants in failing adequately to supervise Ken during such course is clearly so related.[10] The opinion of plaintiffs' expert that defendants' failure

---

[8] The cases cited by plaintiffs for the proposition that it was necessary that Ken be aware of the specific risk for which he assumed responsibility involve *implied* not express risk assumptions. Such specific knowledge *is* required under the doctrine of implied assumption of the risk.

[9] If the negligent act is so related then, as a matter of law, it is reasonably foreseeable whether or not it was actually in the contemplation of either party. To the extent that anything in *Bennett* v. *United States Cycling Federation* (1987) 193 Cal.App.3d 1485 [239 Cal.Rptr. 55] (a case in which the release document contained an express assumption of all risks) suggests a different rule, we respectfully decline to follow it.

[10] While the existence of such a reasonable relationship (which itself will demonstrate reasonable foreseeability) might in some cases be an issue of fact, that is not so here. Where

to provide such supervision was not one of the "potential dangers" of scuba diving makes a judgment under the wrong standard and is therefore irrelevant.[11]

The release signed by Ken covered and was applicable to the act of negligence by the defendants which occurred here. Therefore, the agreement, by its express terms, applied to that negligent act.

## DISPOSITION

The alternative writ is discharged and a peremptory writ of mandate shall issue to the Superior Court of Los Angeles County directing it (1) to vacate its order of February 29, 1988, denying defendants' motion for summary judgment and (2) to enter a new and different order granting said motion and entering judgment in favor of the defendants.

Klein, P. J., and Arabian, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 13, 1988. Mosk, J., was of the opinion that the petition should be granted.

---

"under the undisputed facts . . . there can be no reasonable difference of opinion", the question may be resolved as a matter of law. (*Schrimsher* v. *Bryson* (1976) 58 Cal.App.3d 660, 664 [130 Cal.Rptr. 125]; accord *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 56 [192 Cal.Rptr. 857, 665 P.2d 947]; *Imperial Cas. and Indem. Co.* v. *Sogomonian* (1988) 198 Cal.App.3d 169, 182 [243 Cal.Rptr. 639].)

[11] It is apparent that such testimony was limited to those dangers and risks which are *inherent* to scuba diving and gave no consideration to the possibility of instructor negligence. What plaintiffs' expert was actually addressing was risk exposure which occurs in the *absence* of negligence. We, however, are here concerned with the scope of an agreement expressly releasing instructor negligence. It seems obvious that if the parties had attempted expressly to anticipate the various acts of such negligence which could reasonably be foreseen, an instructor's neglect of a student while in the water (i.e., the very act which occurred here) would head the list.

## APPENDIX

KEN · SALEIMAN

### NAUI WAIVER, RELEASE AND INDEMNITY AGREEMENT

For and in consideration of permitting (1) ___KEN   SALEIMANATIF____
to enroll in and participate in diving activities and class instruction of skin and/or scuba diving given by (2)
___Norman Madison/ Westchester YMCA_____, in the City of ____
___Los Angeles_____, County of ____Los Angeles_____; and State of _California_
_____, beginning on the __29__ day of __July__, 19 _86_, the Undersigned hereby
voluntarily releases, discharges, waives and relinquishes any and all actions or causes of action for personal
injury, property damage or wrongful death occurring to him/herself arising as a result of engaging or
receiving instructions in said activity or any activities incidental thereto wherever or however the same may
occur and for whatever period said activities or instructions may continue, and the Undersigned does for
him/herself, his/her heirs, executors, administrators and assigns hereby release, waive, discharge and
relinquish any action or causes of action, aforesaid, which may hereafter arise for him/herself and for
his/her estate, and agrees that under no circumstances will he/she or his/her heirs, executors, administrators
and assigns prosecute, present any claim for personal injury, property damage or wrongful death against (2)
___Norman Madison/ Westchester YMCA_____ or any of its officers,
agents, servants or employees for any of said causes of action, whether the same shall arise by the
negligence of any of said persons, or otherwise. IT IS THE INTENTION OF (1) _____
_____ BY THIS INSTRUMENT, TO EXEMPT AND RELIEVE (2) _____
___Norman Madison/ Westchester YMCA_____ FROM LIABILITY FOR
PERSONAL INJURY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE.

The Undersigned, for him/herself, his/her heirs, executors, administrators or assigns agrees that in the
event any claim for personal injury, property damage or wrongful death shall be prosecuted against (2)
___Norman Madison/ Westchester YMCA_____ he/she shall indemnify
and save harmless the same (2) ____Norman Madison/ Westchester YMCA_____
_____ from any and all claims or causes of action by whomever or wherever made or presented
for personal injuries, property damage or wrongful death.

The Undersigned acknowledges that he/she has read the foregoing two paragraphs, has been fully and
completely advised of the potential dangers incidental to engaging in the activity and instructing of skin
and/or scuba diving, and is fully aware of the legal consequences of signing the within instrument.

WITNESS: _____

DATED: __7-29-86_____

Signature of Student

Signature of Parent or Guardian — where applicable

EXHIBIT D   EXHIBIT E

**— THIS FORM IS TO BE RETURNED BY SECOND COURSE MEETING —**