Filed 4/29/16  Torres v. House of Air CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DIANA TORRES,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>HOUSE OF AIR, LLC,<br><br>　　　　Defendant and Respondent. | A142940<br><br>(San Francisco County<br>Super. Ct. No. CGC-13-530731) |

　　　　Plaintiff Diana Torres (Torres) sustained a serious injury to her knee as a result of a trampolining mishap at defendant House of Air, LLC's (HOA) trampoline facility. Torres sued HOA for negligence and premises liability.  HOA moved for summary judgment on the grounds that Torres released any claims against HOA and assumed the risk of injury associated with participating in an inherently dangerous activity.  The trial court granted summary judgment based on the "clear and unambiguous" release Torres signed, making it unnecessary for the court to rule on HOA's assumption of risk defense.

　　　　Torres appeals, contending the trial court erred in finding the release to be clear and unambiguous.  She further contends that summary judgment should not be affirmed based on HOA's assumption of risk defense, because there was a triable issue of material fact whether HOA increased the risk of harm beyond that inherent in standard trampolining.  We agree with the trial court that Torres signed a clear and unambiguous release of her claims against HOA, and we therefore affirm without needing to reach the assumption of risk defense.

1

## FACTUAL BACKGROUND

### The Parties

Torres was born in Columbia and is a native Spanish speaker. In January 2010, she arrived in San Francisco to work as an au pair. She had approximately five years of English language education before coming to the United States. While here, she completed two courses at Stanford University, one a finance course taught in English, the other a course in conversational English for non-native speakers. She also studied English at City College of San Francisco from February 2010 through June 2011. In her responses to form interrogatories, Torres stated that she could not speak or write English with ease. However, she testified (via a translator) at her deposition that she could "[m]ore or less" speak, read, and write in English.

HOA operates a trampoline facility in San Francisco. Customers use the trampolines for jumping or planned activities such as dodge ball, fitness classes, or trampoline basketball. There are distinct trampolining areas at the facility. One area, called the Matrix, is the main trampoline structure, consisting of 42 conjoined trampolines that allow customers "maximum uninterrupted bounce space while providing maximum levels of safety." A second area, called the Training Ground, is for "performance-based training for Flyers to improve aerial awareness, acuity, and ability." According to HOA's website, "[t]op gymnasts, board sport specialists, and professional athletes" use the Training Ground "to improve skills for various sports, including gymnastics, snowboarding, skiing, wakeboarding, skateboarding and kite boarding, giving athletes a safe way to practice and create new aerial maneuvers. Safety harnesses are used on three competition-grade trampolines, and Flyers are able to reach extreme heights on the one-of-a-kind, custom-built, octagon-shaped center trampoline."

### The Participant Agreement

HOA requires all customers to sign a participant agreement before they are allowed to use the facility. When customers first enter HOA, they encounter a group of computer stations. There, each customer must electronically review the participant agreement and enter his or her name, e-mail address, and date of birth to electronically

2

sign the agreement. An electronic version of the signed participant agreement is then sent to the customer at the e-mail address provided. After signing the agreement, the customer proceeds to the reception desk, where a staff member confirms in the computer system that the customer has signed an electronic version of the participant agreement.[1] The staff member reviews the agreement to ensure it has been signed, and provides a wristband and a hand stamp to the customer to permit entry to the trampolining area. If a customer returns to HOA at a later date, he or she is not required to sign a new participant agreement. Instead, the customer proceeds directly to the reception desk, where a staff member verifies on an HOA computer that the customer already has a signed participant agreement on file.

At the time of Torres's first visit to HOA, the participant agreement was entitled "HOUSE OF AIR, LLC PARTICIPANT AGREEMENT, INDEMNIFICATION, GENERAL RELEASE AND ASSUMPTION OF RISK." It contained seven unnumbered paragraphs providing in substance as follows:

"I UNDERSTAND THAT TRAMPOLINING IS AN INHERENTLY DANGEROUS ACTIVITY. In consideration of House of Air, LLC ('HOA' or 'House of Air') allowing me . . . to participate in HOA activities, including, but not limited to, trampolining, trampoline park access, trampoline dodgeball, trampoline basketball, aerial training, fitness classes, bounce house and café access and other athletic and amusement activities (collectively 'Activities'), I agree to forever release, indemnify and discharge House of Air, LLC, the United States of America, The Presidio Trust, and their respective affiliates, agents, officers and directors on behalf of myself, my spouse, my children, my parents, my guardians, and my heirs, assigns, personal representative and estate, and any and all other persons and entities who could in any way represent me . . . .

"I acknowledge that participation in the Activities entails both known and unknown risks that could result in SERIOUS INJURY or DEATH, resulting from such

_____

[1] Customers also have the opportunity to print out, review, and sign the participant agreement in advance by downloading it from HOA's website.

3

things as, without limitation, exposed springs, hooks, frames and/or other pieces of equipment; poor lighting; lack of supervision and/or trained spotters; lack of protective padding, mats, netting, and/or other proper equipment; lack of any other proper safety measure; slipping and/or falling on and/or off equipment; collision with fixed objects and/or people; attempted jumps, runs, stunts, tumbles, somersaults, maneuvers and/or acrobatics; having multiple participants participate in the Activities at one time; the physical condition, fitness and/or abilities of me and all other participants; weight differences between me and other participants; weather and/or all other environmental conditions; my and HOA negligence, actions and/or omissions committed by me, . . . HOA and/or any other persons; and/or incomplete instructions.

"**I expressly and voluntarily release, acquit, and forever discharge House of Air, LLC, the United States of America, The Presidio Trust and agree to hold their respective affiliates, agents, officers and directors harmless of and from all, and all manner of action and actions or omission(s), cause and causes of action, suits, debts, damages, judgments, and claims and demands whatsoever, in law or in equity.**

"I agree that I . . . am voluntarily participating in the activities offered by HOA including, but not limited to, the use of the equipment, facilities and the premises. I am assuming on behalf of myself . . . all risk of personal injury, death, or disability to myself . . . that may result from participation or use of the HOA facilities, or any damage, loss or theft of any personal property which I . . . may incur. I understand that the HOA facility has trampolines and other equipment and that using trampolines has inherent risks. . . . I certify that I have adequate health insurance to cover any injury or damage that I may cause or suffer, or else I agree to personally bear the costs of such injury or damage. I further certify that I assume all risks of any medical or physical condition I may have.

"I agree to the sole and exclusive venue of the City and County of San Francisco, CA. I further agree that the substantive law of California shall apply without regard to any conflict of law rules of that State. I also agree that if any portion of this agreement is found to be void or unenforceable, the remaining portion shall remain in full force and

4

effect.  Any controversy between the parties hereto involving any claim arising out of or relating to a breach of this Agreement shall be submitted to and be settled by final and binding arbitration in San Francisco, California, in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association.

"I understand that this agreement extends forever into the future and will have full force and legal effect each and every time I visit House of Air, whether at the current location or any other location or facility.  I agree to indemnify and hold House of Air harmless from and against any and all losses, liabilities, claims, obligations, costs, damages and/or expenses whatsoever paid, incurred and/or suffered by HOA, including, but not limited to, attorneys' fees, costs, damages and/or judgments HOA incur [*sic*] in the event that I cause any injury, damage and/or harm to any other person while at House of Air. . . .

"By signing this document, I intend to forever waive my right . . . to maintain any lawsuit or action against House of Air based on any claim of personal injury or death or property loss or damage.  I have had sufficient opportunity to read and understand this agreement and consult with legal counsel, or have voluntarily waived my right to do so.  I knowingly and voluntarily agree to be bound by all terms and conditions set forth herein."

**Torres's Visits to HOA and the Accident**

Torres first visited HOA on May 15, 2011.  She used the computer station to electronically sign the participant agreement, which contained the language quoted above.  She did not ask anyone to translate the agreement before entering her name and birthday.  After receiving a wristband, she and two friends jumped in the Matrix trampoline area without incident.

Torres and her friends returned to HOA on June 25, 2011.  She did not sign another participant agreement, instead proceeding to the reception desk, where an HOA staff member looked up her name on the computer and gave her a wristband.

After checking in, Torres and her friends were directed to the Training Ground trampoline area.  One of Torres's friends had signed them up online for a board sports

5

class, and Torres believed they would be using a harness during the class because that was how it was described on HOA's website. Without offering a safety harness or providing any safety instruction, however, an instructor explained and demonstrated a jump, and then left to go instruct another group of jumpers on a nearby trampoline. Torres and her friends completed the jump. The instructor returned, explained a second jump, and then left. Torres took her turn at the second jump, severely injuring her leg when she landed that jump.

Torres believed she and her friends were placed in a different class than the one they had signed up for because they were directed to a different trampoline than they expected, they were never offered safety equipment, and after Torres injured her leg an HOA employee told Torres's friend that they were not in the activity they had paid for.

## PROCEDURAL BACKGROUND

### The Pleadings

On April 18, 2013, Torres filed a complaint for damages against HOA, alleging causes of action for negligence and premises liability.

HOA answered the complaint, generally denying Torres's allegations and asserting 13 affirmative defenses, two of which are relevant here. The first affirmative defense asserted that Torres "assumed the risk of any injuries" she suffered; the thirteenth asserted that she "signed a release from liability that clearly notified her in clear and unambiguous language understandable to any lay person that the effect of signing the agreement would be to preclude liability."

### HOA's Motion for Summary Judgment or, in the Alternative, Summary Adjudication

On March 19, 2014, HOA filed a motion for summary judgment or, in the alternative, summary adjudication, asserting Torres's signed release and assumption of the risk as complete defenses to her claims.

Torres opposed HOA's motion on the grounds that any release contained in the participant agreement was unclear, ambiguous, and inexplicit; the release contained a latent defect because it did not identify the different levels of trampolines; and Torres did

6

not understand what she was signing in light of her English language limitations.  She also argued that the assumption of risk doctrine did not bar her claims because HOA increased the risk inherent in trampolining by directing Torres to a trampoline in the Training Ground area without warning of the increased risk of using the advanced trampolines.

In support of her opposition, Torres submitted a declaration of expert witness Kenneth Solomon, who holds Bachelor of Science, Master of Science, and Doctor of Philosophy degrees in engineering and a post-doctorate degree in risk-benefit assessment. Based on his review of materials related to the lawsuit, as well as ASTM International's Standard Practice for Design, Manufacture, Installation, Operation, Maintenance, Inspection and Major Modification of Trampoline Courts (F2970-13), Solomon was of the opinion that the trampoline jumps in HOA's Training Ground area were beyond a normal person's experience and were associated with a greater inherent risk than on a typical trampoline court; HOA did not provide any warning to Torres about this greater risk; Torres did not receive proper and sufficient supervision during her participation in the trampoline activities in the Training Ground area; and HOA failed to meet ASTM International's standard practices in that it failed to monitor activity on the trampoline court at all times during operation and it failed to provide instructions to patrons about the greater inherent risk associated with the trampoline jumps in the Training Ground area.

HOA filed its reply on June 2, 2014, in support of which it sought judicial notice of an April 7, 2014 order in *Nasledov v. House of Air* (Super. Ct. San Francisco County, 2013, No. CGC 13-529853) granting summary judgment for HOA on the ground that the plaintiff there had signed a clear, unambiguous, and explicit release of plaintiff's claims against HOA.  HOA also filed objections to 10 paragraphs in Solomon's declaration.

On June 3, 2014, Torres filed a response to HOA's objections to evidence, as well as a supplemental declaration of her counsel, appended to which was a copy of an updated "Assumption of Risk, Waiver of Liability, and Indemnity Agreement" then found on HOA's website.  HOA objected to this "late submittal of evidence."

7

**The Order Granting Summary Judgment**

After briefing was complete, the trial court issued a tentative ruling that stated in its substantive entirety: "The motion for summary judgment is granted. The release is clear and unambiguous and exculpates defendant from plaintiff's claims. Plaintiff cannot avoid the release by arguing that she is not proficient in English. See, *Randa[s] v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158."

Torres contested the tentative ruling, and the matter came on for hearing on June 5, 2014. Following brief argument, the court confirmed its tentative ruling.[2] It signed an order granting summary judgment for HOA that day, and entered judgment to that effect on June 25.

This appeal followed.

## DISCUSSION

**The Applicable Law and the Standard of Review**

Torres's primary contention on appeal is that the trial court erred when it concluded the participant agreement contained a clear and unambiguous release of her claims against HOA. The court in *Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1356–1357 (*Benedek*), summarized the law concerning such releases, as follows: "A written release may exculpate a tortfeasor from future negligence or misconduct. [Citation.] To be effective, such a release 'must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties.' [Citation.] The release need not achieve perfection. [Citation.] . . . [¶] The determination of whether a release contains ambiguities is a matter of contractual construction. [Citation.] 'An ambiguity exists when a party can identify an alternative, semantically reasonable,

---

[2] At the hearing, the court declined to rule on HOA's request for judicial notice because it did not rely on the *Nasledov v. House of Air* order or cite it in its own order. It rejected HOA's objection to Torres's submission of HOA's release operative at the time of the hearing, indicating that it would consider "the current release for the purpose suggested, that there is an arguably clearer way to state this. I think there is almost always a clearer way, but that's not the test here." There is no indication in the record that the court ruled on HOA's objections to evidence.

8

candidate of meaning of a writing. [Citations.] An ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence.' [Citation.] . . . If an ambiguity as to the scope of the release exists, it should normally be construed against the drafter. [Citations.]" (Accord, *Leon v. Family Fitness Center (# 107), Inc.* (1998) 61 Cal.App.4th 1227, 1235; *Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 755 (*Paralift*); *Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 597–598 (*Madison*); *Bennett v. United States Cycling Federation* (1987) 193 Cal.App.3d 1485, 1490.)

As to the scope of a release, we set forth the law in *Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1485 (*Cohen*): "The scope of a release is determined by its express language. 'The express terms of the release must be applicable to the particular negligence of the defendant, but every possible specific act of negligence of the defendant need not be spelled out in the agreement. [Citation.] When a release expressly releases the defendant from any liability, it is not necessary that the plaintiff have had a specific knowledge of the particular risk that ultimately caused the injury. [Citation.] If a release of all liability is given, the release applies to any negligence of the defendant. " 'It is only necessary that the act of negligence, which results in injury to the releaser, be reasonably related to the object or purpose for which the release is given.' " [Citation.]' [Citation.] As we have said, '[t]he issue is not whether the particular risk of injury is inherent in the recreational activity to which the release applies, but rather the scope of the release.' [ Citation.]"

Finally, in *Cohen, supra,* 159 Cal.App.4th at p. 1483, we also summarized the standard by which we are to review a trial court's summary judgment based on a contractual release provision:

"Appellate review of a summary judgment is limited to the facts shown in the supporting and opposing affidavits and those admitted and uncontested in the pleadings. As in the trial court, the moving party's papers are strictly construed and the opposing party's are liberally construed. All doubts as to the propriety of granting the motion—i.e., whether there is any triable issue of material fact—are to be resolved in

favor of the party opposing the motion. [Citation.] While appellate review operates under the same general principles applicable in the trial court, the appellate court must independently determine the construction and effect of the facts presented to the trial judge as a matter of law. [Citations.] ' "As a corollary of the de novo review standard, the appellate court may affirm a summary judgment on any correct legal theory, as long as the parties had an adequate opportunity to address the theory in the trial court." [Citation.]' [Citation.]

" . . . 'Contract principles apply when interpreting a release, and "normally the meaning of contract language, including a release, is a legal question." [Citation.] "Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, 'construction of the instrument is a question of law, and the appellate court will independently construe the writing.' " [Citation.] "It therefore follows that we must independently determine whether the release in this case negated the duty element of plaintiff['s] cause[] of action." [Citation.]' [Citation.]"

### The Release in the Participant Agreement Was a Clear and Unambiguous Waiver of Torres's Claims Against HOA

As in *Cohen, supra,* 159 Cal.App.4th at p. 1483, there was no conflicting parol evidence concerning the interpretation of the participant agreement. We are thus tasked with independently determining whether the participant agreement clearly, unambiguously, and explicitly communicated the parties' intent that Torres was exonerating HOA from liability for injuries she may suffer as a result of her activities at HOA. We agree with the trial court that it did.

The first paragraph of the participant agreement contained language in which Torres will "agree to forever release, indemnify and discharge" HOA and other entities. While this provision defined *who* Torres was releasing, it contained no specifics as to *what* she was releasing. Thus, standing alone, that paragraph was undeniably inadequate. But the participant agreement contained other provisions that clearly and unambiguously released Torres's claims against HOA.

10

The second paragraph of the participant agreement commenced with an acknowledgment that "participation in the Activities"—defined in paragraph one to include trampolining, aerial training, fitness classes, and "other athletic and amusement activities"—"entails both known and unknown risks that could result in SERIOUS INJURY or DEATH . . . ."  The paragraph then lists a slew of such potential risks, including, "without limitation," "lack of supervision and/or trained spotters," "lack of . . . proper equipment," "lack of any other proper safety measure," "attempted jumps," "my and HOA negligence," "actions and/or omissions committed by me, . . . HOA and/or any other persons," and "incomplete instructions."

Having identified the numerous potential risks to using the equipment at the HOA facility, the next paragraph in the participant agreement states, "**I expressly and voluntarily release, acquit, and forever discharge House of Air, LLC, the United States of America, The Presidio Trust and agree to hold their respective affiliates, agents, officers and directors harmless of and from all, and all manner of action and actions or omission(s), cause and causes of action, suits, debts, damages, judgments, and claims and demands whatsoever, in law or in equity**."

Reading the participant agreement as a whole, as we must (*Paralift, supra,* 23 Cal.App.4th at p. 755; *Madison, supra,* 203 Cal.App.3d at p. 598), we understand these provisions to clearly and unambiguously release HOA from liability for Torres's injuries:  the second paragraph described the potential risks of Torres's participation in trampolining activities at HOA, and the third paragraph stated that Torres was releasing, aquiting, forever discharging HOA, and holding it harmless, from all actions or omissions, causes of action, suits, damages, judgments, and claims.

Torres disagrees, maintaining that the release provision in the third paragraph was ambiguous for multiple reasons.  First, she argues that the paragraph does not identify what is being released, since HOA's negligence and liabilities are only referenced in other paragraphs.  And, citing *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, she contends the "paragraphs do not necessarily bear on each other."  As previously noted, however, we are to read the agreement as a whole.  (*Paralift, supra,*

11

23 Cal.App.4th at p. 755; *Madison, supra,* 203 Cal.App.3d at p. 598.) And *Solis* is not to the contrary. It merely recognized that in the release there at issue, the assumption of risk and indemnity provisions were "grammatically and functionally separate" from the release paragraph and thus did "not necessarily bear on the temporal scope of the release . . . ." (*Solis, supra,* 94 Cal.App.4th at p. 362.) Here, we do not borrow from paragraph four's assumption of risk provision or paragraph six's indemnity provision to reach our conclusion.

Moreover, contrary to Torres's contention, the third paragraph does in fact identify what Torres released: "all manner of action and actions or omission(s), cause and causes of action, suits, debts, damages, judgments, and claims and demands whatsoever, in law or in equity." Torres contends it is unclear whether this passage applied only to the indemnity language in the third paragraph or was intended to apply to the release language in that paragraph as well. This is so, she reasons, because the passage only followed the indemnity language—"hold . . . harmless of and from all"—and "there is no language indicating the parties' [*sic*] intended the indemnification language to also apply to the releasing language." We cannot agree that Torres's reading of paragraph three is an " 'alternative, semantically reasonable' " reading of the language. (*Benedek, supra,* 104 Cal.App.4th at p. 1357.) Rather, the paragraph is reasonably susceptible to only one reading: that Torres was releasing HOA and holding it harmless from "all manner of action and actions or omission(s), cause and causes of action, suits, debts, damages, judgments, and claims and demands whatsoever, in law or in equity."

Torres also challenges the enforceability of the third paragraph's release provision on the ground that it does not expressly release HOA from liability for its own negligence. The law does not require express use of the word "negligence," as the court in *Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62 recognized. There, a member of a health club brought a negligence action against the club for injuries she sustained during an aerobics class. The health club obtained summary judgment based on the following release plaintiff signed when she joined the club: "Accidents/Injury: The member agrees that all exercises and use of the fitness centers are undertaken by the

12

member at the sole risk of the member, and that the fitness center shall not be liable for any claims for injuries or damages whatsoever to person or property of the member or of a guest of a member arising out of or connected with the use of the fitness center." (*Id.* at pp. 64–65.)

Readily dismissing plaintiff's first argument that the exculpatory provision was ineffective because it was not highlighted, italicized, or differentiated by size, the Court of Appeal turned to plaintiff's claim that the provision was unenforceable because it did not contain the word "negligence." (*Sanchez v. Bally's Total Fitness Corp., supra,* 68 Cal.App.4th at pp. 65–66.) It rejected this argument, because "[t]he inclusion of the term 'negligence' is simply not required to validate an exculpatory clause," pointing out that the cases upon which the plaintiff relied found various releases unenforceable because their exculpatory provisions were not clear and unambiguous, not because they omitted the term "negligence." (*Id.* at pp. 66–67.) Rather, the court explained, the dispositive question was whether the release provision was clear, explicit, and comprehensible in itself and when considered and read in whole with the entire agreement. (*Id.* at p. 69.) The court also quoted with approval the health club's argument that " '[w]ere the word "negligence" not read into the waiver and release clause, it would be impossible to imagine what appellant was releasing respondent from, as appellant would already be unable to hold [respondent] liable for injuries not involving [respondent's] negligence.' " (*Ibid.*)

Here, reading the participant agreement as a whole, it is evident that the parties intended the release to cover injuries resulting from HOA's negligence. As noted, paragraph two commenced with an acknowledgment that participation in activities at HOA involved risks that could result in serious injury or death, risks that included HOA's negligence. In the following paragraph, Torres then released HOA from all actions, causes of action, suits, claims, and damages. And, "[i]f a release of all liability is given, the release applies to any negligence of the defendant." (*Benedek, supra,* 104 Cal.App.4th at p. 1357.)

As to whether Torres's claims came within the scope of her release of HOA from liability for its negligence, the *Benedek* court explained, " ' "It is only necessary that the act of negligence, which results in injury to the releaser, be reasonably related to the object or purpose for which the release is given." ' [Citation.]" (*Benedek, supra,* 104 Cal.App.4th at p. 1357.) Such was the case here. The first paragraph of the participant agreement specified that the agreement was "[i]n consideration of [HOA] allowing [Torres] to participate in HOA activities . . . ." It only stands to reason that HOA's alleged acts of negligence, all of which purportedly occurred in connection with Torres's use of HOA's trampoline, were related to the purpose for which Torres signed the release.

In short, the third paragraph contained a valid waiver of Torres's claims against HOA. But even if we were to agree with Torres that it did not, the seventh paragraph—located immediately above Torres's signature—contained this broad, inclusive language: "By signing this document, I intend to forever waive my right . . . to maintain any lawsuit or action against House of Air based on any claim of personal injury or death or property loss or damage. I have had sufficient opportunity to read and understand this agreement and consult with legal counsel, or have voluntarily waived my right to do so. I knowingly and voluntarily agree to be bound by all terms and conditions set forth herein." As expressly stated, by this paragraph, Torres intended to waive her right to hold HOA liable for any personal injuries she may suffer. We cannot perceive how this could be construed as anything but a clear, unambiguous, and explicit release of HOA from liability for Torres's unfortunate injuries.[3]

### There Was No Triable Issue of Material Fact as to Whether HOA Procured Torres's Consent to the Release by Overreaching

In the alternative to her contention that the participant agreement did not contain a clear and unambiguous release of her claims against HOA, Torres also asserted below that because of her "English language limitations," she did not understand that she signed

---

[3] Curiously, Torres omits any reference to the seventh paragraph in her briefs, as she did in her opposition to HOA's motion.

a waiver. She argued that HOA's release contained misrepresentations and overreached because HOA failed to warn her of the increased inherent risk between the trampolines in the Matrix and those in the Training Ground. This, she maintained, distinguished her case from *Randas v. YMCA of Metropolitan Los Angeles, supra,* 17 Cal.App.4th at p. 163, in which the court rejected appellant's claim that a release was invalid because appellant was unable to read it due to her limited English language skills. The trial court here rejected Torres's argument, citing *Randas* and stating, "Plaintiff cannot avoid the release by arguing that she is not proficient in English."

While not raised in her opening brief, Torres reasserts this position in her reply brief, contending that the "following undisputed facts amount to overreaching by HOA: 1) HOA failed, in the release and orally, to warn Appellant of the different types of trampolines and heights achieved at HOA; 2) the trampolines Appellant jumped on during her first visit resulted in much lower heights than during her second visit; 3) without explanation HOA placed Appellant in a different course than she signed up for during her second visit and did not provide a safety harness; and 4) HOA provided no safety instruction prior to Appellant jumping on the Training Ground trampoline and limited supervision while she jumped."

In *Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 563–564, the court recently explained the law applicable to this argument: "[A] release is invalid when it is procured by misrepresentation, overreaching, deception, or fraud. [Citation.] 'It has often been held that if the releaser was under a misapprehension, not due to his own neglect, as to the nature or scope of the release, and if this misapprehension was induced by the misconduct of the releasee, then the release, regardless of how comprehensively worded, is binding only to the extent actually intended by the releaser.' [Citation.] 'In cases providing the opportunity for overreaching, the releasee has a duty to act in good faith and the releaser must have a full understanding of his legal rights. [Citations.] Furthermore, it is the province of the jury to determine whether the circumstances afforded the opportunity for overreaching, whether the releasee engaged in overreaching and whether the releaser was misled. [Citation.]' [Citation.] A 'strong

15

showing of misconduct' by the plaintiff is not necessary to demonstrate the existence of a triable issue of fact here; only a ' "slight showing" ' is required.  [Citation.]"

Torres has not made even a "slight showing" that HOA overreached in obtaining her signature on the participant agreement.  Nothing suggests misconduct or bad faith on behalf of HOA.  At most, the facts on which she relies go to her claim that HOA was negligent, not that it overreached in obtaining her consent to the release.  This argument therefore fails.

Because we affirm summary judgment for HOA based on the release, we need not reach the assumption of risk defense also asserted in HOA's summary judgment motion.

## DISPOSITION

The judgment is affirmed.  HOA shall recover its costs on appeal.


_____
Richman, J.


We concur:


_____
Kline, P.J.


_____
Miller, J.